# SAN DIEGO LAND AND TOWN COMPANY *v.* JASPER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 193.  Argued March 10, 1903.—Decided April 6, 1903.

In this action it was held that the rates for water fixed by a board of supervisors under the statute of California of March 12, 1885, did not amount to a taking of the water company's property without due process of law.

THE case is stated in the opinion of the court.

*Mr. John D. Works* for appellant. *Mr. Bradner W. Lee* and *Mr. Louis R. Works* were on the brief.

*Mr. A. Haines* for appellees. *Mr. T. L. Lewis* was on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought in the Circuit Court against the board of supervisors of San Diego County and others for the purpose of having certain water rates which have been fixed by the board declared void. It is alleged that the rates are so low as to amount to a taking of the plaintiff's property without due process of law. The Circuit Court decided that it did not appear that the rates would have that effect and dismissed the bill, whereupon the plaintiff appealed to this court.

By a statute of California approved March 12, 1885, the board of supervisors of the counties are to fix the maximum water rates in cases like the present. They are authorized to proceed to a hearing upon a petition of twenty-five inhabitants who are taxpayers, and the rates when fixed are to be binding for not less than one year. Subject to that limitation they may

be reëstablished or abrogated upon a similar petition or a petition of the water company subjected to the regulation. The rate was fixed in this case upon a petition of twenty-five taxpayers. The present bill made the petitioners parties as well as the board, and alleged that they were not water takers, but were induced to petition by the consumers, in order that the latter might not admit that any rates other than those originally fixed by the company could be established by any one. The petitioners, after a demurrer by them to the bill was overruled, failed to answer and the bill was taken *pro confesso* as against them. On these facts, before coming to the merits, the appellant contends that this bill should be dismissed. It says that the only parties in interest have made default and that the ordinance regulating the rates was procured by a fraud upon the supervisors, with the consequence, we suppose it to be intended, that the ordinance should be set aside on that ground without going further into the case.

The preliminary objections may be disposed of in a few words. The default of the petitioner is relied upon as the ground of expressions in one or two cases here and elsewhere, that the duties of the supervisors are judicial in their nature. *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, 354; *Jacobs* v. *Board of Supervisors*, 100 California, 121, 130. The conclusion drawn is that when the original plaintiffs disappear the case is at an end. We need not stop to consider to what extent or for what purposes the proceedings before the supervisors properly may be termed judicial. See further *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 750; *Cambridge* v. *Railroad Commissioners*, 153 Massachusetts, 161, 170. It is obvious that they are not so in such a sense as to do the appellant any good. The petitioners did not complain of injury to any private interest of theirs. They had none. They appeared on behalf of the public only and asked purely legislative action in the form of a general rule for the future to govern the public at large. *San Diego Land & Town Co.* v. *National City, ubi supra; Spring Valley Water Works* v. *San Francisco*, 82 California, 286; *Smith* v. *Strother*, 68 California, 194; *Janvrin, Petitioner*, 174 Massachusetts, 514. As soon as such a

rule was established, if not as soon as a hearing was begun, the petitioners were merged in the public affected by the rule. The present bill is an independent proceeding to have the ordinance declared void. In such a case the body making the regulation is the usual, proper and sufficient party respondent, and the default of those who set the original proceedings in motion is immaterial, so long as it defends the case.

The charge that there was a fraud practiced on the board hardly deserves mention, except for the undue warmth with which it has been pressed. There are no allegations in the bill sufficient to open the question. The board is here adhering to and defending its action, professing still to be satisfied. There is no indication of its fraud or attempt at fraud. The course adopted was adopted for reasons which appear on the face of the bill, the situation was made plain at the hearing before the supervisors, and we see no evidence that the parties did more than exercise their legal rights.

Coming now to the merits, the first thing to be noticed is that the ordinance complained of took effect in November, 1897, and that after a year from that date the appellant was free to apply for a modification of the rates. It did not do so. There is no allegation or suggestion that the board is corrupt or that it purposes and intends, without regard to evidence, to adhere to unjust rates so as to destroy or impair the value of the appellant's works. Under such circumstances the question arises whether this is much more than a moot case, in view of the principles adverted to in *Tennessee* v. *Condon, ante*, p. 64, or at least whether the appellant should not be required to exhaust its other remedies before coming into court. In any event, the limited effect of the ordinance must be taken into account when we are called on to declare it " such a flagrant attack upon the rights of property under the guise of regulations as to compel the court to say that the rates prescribed will necessarily have the effect to deny just compensation for private property taken for the public use." *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 754. In a case like this we do not feel bound to reëxamine and weigh all the evidence, although we have done so, or to proceed according to our

independent opinion as to what were proper rates. It is enough if we cannot say that it was impossible for a fair-minded board to come to the result which was reached.

The scheme of the California statute is as follows: The board is to estimate the value of the property actually used and useful in furnishing the water, and the annual reasonable expenses, including the cost of repairs, management, and operating the works. The cost of permanent improvements is not to be included under this last head, but "when accomplished shall be included in the present cost and cash value of such work." Then the board is to adjust the rates so that the net receipts and profits of the water company shall be not less than six nor more than eighteen per cent upon the said value of the used and useful property. The board in this case estimated the value of the plant to be $350,000, and the returns at the rates fixed to be $34,442, or six per cent on the value and the expenses necessary to maintain and operate the plant, which were found to be $13,442.

The main object of attack is the valuation of the plant. It no longer is open to dispute that under the Constitution "what the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public." *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 757. That is decided, and is decided as against the contention that you are to take the actual cost of the plant, annual depreciation, etc., and to allow a fair profit on that footing over and above expenses. We see no reason to doubt that the California statute means the same thing. Yet the only evidence in favor of a higher value in the present case, is the original cost of the work, seemingly inflated by improper charges to that account and by injudicious expenditures, (being the cost to another company which sold out on foreclosure to the appellant,) coupled with a recurrence to testimony as to the rapid depreciation of the pipes. In this way the appellant makes the value over a million dollars. No doubt cost may be considered, and will have more or less importance according to circumstances. In the present

case it is evident for reasons some of which will appear in a moment that it has very little importance indeed..

The property of the company and its predecessor consisted not only of the waterworks, but of a large amount of land. On the evidence the waterworks may be estimated at about a quarter of the total value. The earlier company was unable to raise the money it needed. Its bonds for $500,000, secured by mortgage, were not worth more than 95, and an attempt to raise a further loan on mortgage failed. The whole amount that the market and interested stockholders were willing to lend on all the security it could offer was $650,500. The company was put into the hands of a receiver, who issued some certificates, which, we infer, were made a paramount lien. Then, by arrangement with the stockholders who were willing to go on, the mortgage was foreclosed and all the property was sold to those stockholders for the nominal sum of $889,163.33, which was equal to the amount of outstanding certificates and bonds, and was paid by turning them in. This was in 1897, a few months before the passage of the ordinance complained of. The purchasers organized the present corporation, and the above-mentioned sum is the cost of the land and waterworks to it. The appellant protests that this is not a fair value for the property of the company. We doubt whether it is not a liberal allowance. The officers of the two companies at the time thought that they got more than they could have got in any other way. But at all events, it is decided that the price is evidence, we might say more important evidence than the original cost. *Dow* v. *Beidelman*, 125 U. S. 680. If the supervisors were convinced by it we certainly could not say, as matter of law, that they were wrong. Of course, as we indicated the other day in *Knoxville Water Co.* v. *Knoxville*, ante, p. 434, if an attempt had been made to cut down values by the reduction of rates the courts would know how to meet it. But there is nothing of that sort in this case.

The valuation of property for the purposes of taxation may not be technical evidence in a court of law, yet it may be considered in coming to a decision whether the action of the supervisors was unfair, especially if, as was testified, it was sworn

to by the officers of the company. The total valuation for 1897 was somewhat less than the price got at the sale, and that of the plant was $155,000.

Another circumstance was adverted to by the Circuit Court which we may mention. Whether the facts were stated with perfect accuracy or the reasoning from them was absolutely correct we need not stop to consider. The only question for us is whether it came to a right result. In reaching its conclusion the Circuit Court mentioned the drought from which that part of the country has suffered since the passage of this ordinance. At about that time the supply began to fall off. In December of the following year the reservoir was empty. The appellant asks us to take judicial notice that the rainfall has not been sufficient for the past five years to fill the storage reservoir of any large water company supplying water for irrigation in Southern California, but contends that the fact is immaterial to the point before us.

Of course it is hard to answer the proposition that value expressed in money depends on what people think at the time, That determines what they will give for the thing, and whether they think rightly or wrongly, if they or some of them will give a certain price for it, that is its value then. Nevertheless. it has been held, under some circumstances, even in ordinary suits, that when events have corrected the prophecy of the public, the facts may be shown and a more correct valuation adopted. *Twycross* v. *Grant*, 2 C. P. D. 469, 544; *Peek* v. *Derry*, 37 Ch. D. 541, 591 (not reversed on this point by 14 App. Cas. 337); *Whiting* v. *Price*, 172 Massachusetts, 240. See *National Bank of Commerce* v. *New Bedford*, 175 Massachusetts, 257, 262. We think that upon the question before us subsequent events may be considered. The facts mentioned would tend to depreciate the market value of the plant, and very much depreciate the value of the services rendered to consumers during the year when the ordinance necessarily was in force. This consideration is the only answer that needs to be made to elaborate calculations by the appellant of the worth of the services to consumers, beyond adding that it does not appear that

the supervisors did not give them what little weight they de-
serve upon the issues which the supervisors had to decide.

It is said that, if the drought is considered, the way in which
it was met by digging wells and pumping also ought to be
taken into account. That, however, was the private affair of
the company. It was a voluntary act for which additional
charges were made, and has little or no bearing on the issue,
less even than the drought, to which we do not attribute much.
It seems, however, that soon after the first year consumers, in
order to get pumped water, contracted to pay ordinance rates
and an extra charge, by a voluntary arrangement with the
company, and for all we know that voluntary arrangement
may be going on to this day, and may be one reason why the
company has not applied to have the rates revised.

If the price paid by the present company for all the property
was the fair value, the evidence available, such as the propor-
tion between the valuations of the different parts by the com-
pany, the proportion between the assessment and taxation of
the different parts and the testimony of an expert, indicates
that the supervisors were liberal in valuing the plant at
$350,000. Indeed, the proportion adopted is not a principal
point of complaint.

A subordinate complaint is made, however, that the rates
will not yield a net income of six per cent, even upon the valua-
tion adopted. The counsel for the appellees contends, on the
other hand, that that valuation was a good deal too high, that
too much was allowed under the head of expenses, that the
supervisors should have taken into account income from do-
mestic rates, and finally sets up a claim that goes to the bottom
of the whole assessment. By an amendment of the California
statute, approved March 2, 1897, the act is not to invalidate or
to interfere with contract easements for the flow and use of
water. It is contended that the owners of water rights described
in *Osborne* v. *San Diego Land & Town Co.*, 178 U. S. 22, which
it is said now have been decided to be valid, (*Fresno Canal &
Irrigation Co.* v. *Park*, 129 California, 437; *San Diego Flume
Co.* v. *Souther*, 90 Fed. Rep. 164; 104 Fed. Rep. 706; 112 Fed.
Rep. 228,) are entitled to water upon merely paying their share of

the expenses, and that all the water takers have water rights.
We shall say nothing on these points.

We will say a word about the opposite contention of the
appellant, that there should have been allowance for deprecia-
tion over and above the allowance for repairs.   From a constitu-
tional point of view we see no sufficient evidence that the
allowance for six per cent on the value set by the supervisors,
in addition to what was allowed for repairs, is confiscatory.
On the other hand, if the claim is made under the statute,
although that would be no ground for bringing the case to
this court, it has been decided by the Supreme Court of Cali-
fornia that the statute warrants no such claim.   *Redlands,
Lugonia & Crafton Domestic Water Co.* v. *Redlands,* 121
California, 312, 313.   We go no further into detail.   We do not
sit as a general appellate board of revision for all rates and
taxes in the United States.   We stop with considering whether
it clearly appears that the Constitution of the United States
has been infringed, together with such collateral questions as
may be incidental to our jurisdiction over that one.   From
this point of view there is only one other matter to be men-
tioned.

The supervisors in determining the rates assumed that the
amount of water available for outside irrigation, apart from
the amount used and paid for by National City, was enough
for a little over 6000 acres, and on that point there is no serious
dispute.   Then they fixed the rates as if the company supplied
this 6000 acres, although such was not the fact.   Of course,
the amount actually received for the water actually furnished was
correspondingly less than the receipts as estimated by the super-
visors upon their assumption.   If there were no force in any of
the arguments for the appellees which we have passed by, the re-
sult of this mode of estimate might be that the appellant did not
get six per cent on the total value of its plant.   But here again
we have to distinguish between constitution and statute.   If a
plant is built, as probably this was, for a larger area than it
finds itself able to supply, or, apart from that, if it does not, as
yet, have the customers contemplated, neither justice nor the
Constitution requires that, say, two thirds of the contemplated

number should pay a full return. The only ground for such a claim is the statute taken strictly according to its letter.

But when a case is brought here on a constitutional ground which wholly fails, we certainly shall not be astute to support it upon another which we could not consider apart from the failing foundation, and which has nothing to commend it but the letter of the law. The statute of California no doubt was contemplating the case of waterworks fully occupied within the area which they intended to supply. It hardly can have meant that a system constructed for six thousand acres should have a full return upon its value from five hundred, if those were all that it supplied. At all events we will not be the first to say so. If necessary to avoid that result we should assume that only a proportionate part of the system was actually used and useful within the meaning of the statute. Upon the whole case we are unable to say that the Circuit Court should have declared the rates confiscatory. They are the rates which were fixed by the original company at the start, with prophecies, which the purchasers who believed them think amounted to a contract, that they never would be higher. If the original company embarked upon a great speculation which has not turned out as expected, more modest valuations are a result to which it must make up its mind.

*Decree affirmed.*