# Kittanning Telephone Company, Appellant, v. The Public Service Commission.

*Public Service Commission—Public Service Company Law— Telephone companies—Rates—Increase—Unreasonable increase— Evidence.*

On a complaint against an increased schedule of rates filed by a telephone company with the Public Service Commission, a valuation for rate-making purposes is not always necessary to establish the right to such increase. On proper showing, an increased rate may be justified by evidence of such increase in the cost and expense of rendering the service as will satisfy the Public Service Commission and the court that the new rate is reasonable in the

circumstance, but the necessary elements for such comparison must appear.

On the application of a telephone company to increase its rates, based largely upon the rising cost of maintenance and operation, the book cost of the company was submitted to show its valuation for rate-making purposes and it was sought to justify the increased rates by the increased cost in operation and maintenance. On a valuation based on the book cost it appeared that the company had available for dividends at the old rates about seven per cent on the book cost in 1917, eight per cent in 1918, and in 1919 almost six per cent. The decrease in the amount available for 1919 could be accounted for by expenses incurred in changing pole lines, etc., which could not be properly charged to operating expenses. Under such circumstances, the Public Service Commission properly held that the increased rates were unjust and unreasonable and an order sustaining the complaints will be affirmed.

Argued April 22, 1921.  Appeal, No. 92, April T., 1921, by Kittanning Telephone Company, from order of the Public Service Commission.  Complaints Nos. 3133-3156-3170, 1920, in the cases of Borough of Ford City, Borough of Leechburg, and J. W. Patterson et al. v. Kittanning Telephone Company and the Public Service Commission of the Commonwealth of Pennsylvania on appeal.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.  Affirmed.

Complaint against increased schedule of rates of telephone company.

The facts are stated in the opinion of the Superior Court.

After hearing the commission sustained the complaints and issued the following order from which the respondent appealed:

These matters being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaints and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and

88 KITTANNING TEL. CO., Appel., *v.* PUB. SER. COM.

Statement of Facts—Opinion of the Court. [77 Pa. Superior Ct.

filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof:

Now, to wit, September 22, 1920, it is ordered: that the complaints in so far as they relate to the rates charged by respondent be and they are hereby sustained.

It is further ordered: That the Kittanning Telephone Company, respondent, file, post and publish, effective October 1, 1920, upon one day's notice to the public and this commission, "Supplement No. 3 to tariff schedule P. S. C. Pa. No. 2"; said supplement to cancel Supplement No. 2 to tariff P. S. C. Pa. No. 2 and to reinstate the rates and charges contained in tariff schedule P. S. C. Pa. No. 2 and Supplement No. 1 thereto, effective prior to January 1, 1920.

*Error assigned* was the order of the commission.

*R. L. Ralston,* of *Ralston and Graff,* for appellant.

*Clarence O. Morris,* and with him *Floy C. Jones* and *Sterling G. McNees,* for intervening appellees.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY LINN, J., July 14, 1921:

Appellant complains of the determination that its new rates effective January 1, 1920, were unreasonable and of an order of the commission restoring the superseded rates as of October 1, 1920. It operates five exchanges with about 4,700 telephones in several boroughs and rural districts in Armstrong and adjoining counties. It was incorporated in 1896 with an authorized capital of $4,000 increased from time to time until the amount now is $283,425, said to have been issued as follows: "for cash $153,850, stock discount $4,000, for dividends

$108,524; issued for the purchase of other telephone properties $17,050.50." It has no bonded indebtedness. "From 1909 to 1919 inclusive, it paid a quarterly cash dividend of 2% and in 1912 declared a stock dividend of $49,900, and in 1916 one for $46,825. In January and April, 1920, a 2% cash dividend was declared and paid."

On December 1, 1919, the company filed a new tariff increasing its rates, effective January 1, 1920. Before that date complaints against the tariff were filed by several boroughs and a number of individuals; they were consolidated and heard together and the complaints concerning the quality of the service were decided in favor of the company. In addition to the evidence offered at the hearings, appellant submitted its books to the commission's bureau of accounts and the report of the bureau was put in evidence by agreement. There is no evidence of the value of the property used and useful in the public service though the book cost is given. In their argument counsel for appellant say, "......the issue in this court is not the fixing of the value of the property of the appellant as frequently occurs in these cases, but the issue is whether the schedule of rates to the patrons of the company should not follow the cost of maintaining the service......The testimony discloses that in the summer of 1919 the cost of all the labor connected with the operating and maintenance of the telephone lines advanced......" It is suggested that the evidence shows that maintenance and operating expenses have doubled since 1914 but that "the gross revenue of the company will not in 1920 be double that of 1914." Being without evidence of value for rate-making purposes, appellant seeks to sustain its new rates mainly by the comparison suggested. The commission concluded that the new rates were unreasonable, and that the superseded rates were reasonable and should be restored.

On a proper showing an increased rate may be justified by evidence of such increase in the cost and expense

of rendering the service as will satisfy the commission
and the court that the new rate is reasonable in the cir-
cumstances, but the necessary elements for such com-
parison must appear.   In this record essential elements
for that comparison are lacking: ·is the service worth
the increased charge? for, of course, the public should
not pay more than the service is worth: Smyth v. Ames,
169 U. S. 466, 544, etc.   Has appellant's plant been so
over-developed to meet probable future demands that its
present patrons alone should not pay the full return:
San Diego Land, etc., Co. v. Jasper, 189 U. S. 439, 446?
How much of the book cost here represents the cost of
property not now used or useful in the public interest?
Other deficiencies might be mentioned.

For the purposes of the case the commission assumed
that the book cost of the property was its value and used
it to ascertain the reasonable rate, and while this is in-
accurate, appellant so submitted its case and was not
injured by the assumption.   The accountants' reports
show that the book cost includes property which is
neither used nor useful in the public service at the pres-
ent time, so that as a rate base, it is too high.   How-
ever, accepting the book cost and certain adjustments of
the company's accounts made by the commission's ac-
countants, we find that the book cost in the three years
prior to the effective date of the new rates was as fol-
lows:

| 1917 | 1918 | 1919 |
|------|------|------|
| $313,903.23 | $335,222.10 | $346,840.51 |

The books showed that after paying an 8% dividend on
its capital in each of those years, it carried to surplus
the following:

| 1917 | 1918 | 1919 |
|------|------|------|
| $11,602.05 | $15,239.41 | $14,410.58 |

The required readjustment of the books for those years
will increase the amounts so carried to surplus.

To justify its position on this appeal, and taking the book cost for the rate base, appellant finds it necessary now to restate its accounts as carried upon its books by claiming in addition to the deductions for depreciation already made for 1917 and 1918 an additional sum for depreciation at the rate of 6% on the book cost. The commission allowed 5.6% of that sum, leaving available for dividends in those years the following:

|  | 1917 | 1918 | 1919 |
|---|---|---|---|
| Gross revenue, .... | $94,665.79 | $109,134.93 | $116,282.45 |
| Operating expenses, taxes and interest, . | 55,607.23 | 64,253.91 | 76,241.47 |
|  | $39,058.56 | $44,881.02 | $40,040.98 |
| Depreciation 5.6% on book cost ...... | 17,578.58 | 18,772.43 | 19,423.05 |
| Available for dividends ........ | $21,479.98 | $26,108.59 | $20,617.92 |

The record therefore shows a total of $68,206.49 available for dividends in the years 1917, 1918 and 1919 at the old rates. In those three years the company paid dividends of 8% each year, a total for the three years of $66,995.50. It appears then that after providing as above in 1917 appellant had available for dividends about 7% on the book cost; in 1918 8% and in 1919 almost 6%. But appellant's accounts for 1919 are further subject to the criticism that they include as an operating expense called "other maintenance expense" an item of $11,159.98, concerning which the report of the bureau of accounts states, "There were also charged to this account expenditures which were incurred in changing the pole lines between Kittanning and Ford City on account of the county changing the grades and improving the public road between these boroughs. Owing to insufficient detail on the books of the company we were unable to obtain the actual amount of the abnormal charge to

this maintenance account." Notwithstanding appellant's suggestion to the contrary in its petition for rehearing below and in its argument in this court, it is therefore obvious that the item of $11,159.98 cannot all be properly considered as an operating expense in 1919 alone, but that, for rate-making purposes, it should be distributed. Of course, with the evidence insufficient to analyze and distribute the item, as the accountants found, the operating expenses for 1919 cannot be determined with accuracy for the purpose now desired; the consequences of that however remain with appellant for the statute placed the burden of proof upon it. We must take the record as the parties have presented it, and so considering it, we cannot find that the return shown above for 1919 is legally inadequate in the circumstances of this case.

Until now we have made no separate reference to the accounts under the new rates from January 1, 1920, to April 30, 1920, showing as appellant contends, that at those rates and on the assumption that the net results for the remaining eight months of 1920 would be twice the net results of the first four months, there will be a deficit in 1920 of $627 after allowing depreciation at the rate of 6% on a book cost said to be $368,543 (greater in amount and rate than formerly) and the payment of an 8% dividend for 1920.

The effective date of the new rate was made January 1, 1920. The hearings in the case began January 8, 1920, and were concluded April 22, 1920, with the understanding, as we have said, that the commission's bureau of accounts should go over appellant's books and make a report which should be filed and become part of the evidence. We cannot accept appellant's suggestion that the short experience in 1920, together with its prediction, wholly dissociated from its profitable history to the end of 1919, shows that the new rates are reasonable, or that the former rates are unreasonable; on the contrary, when considered with the evidence to which we

have already referred, we all agree that we must sustain the conclusion of the commission.

If reasonable trial realizes appellant's apprehension of unsuccessful operation at the rates fixed, article 2, section 1 (f) of the Public Service Company Law 1913, P. L. 1379, provides a method for relief.

The order of the commission is affirmed, the costs of this appeal to be paid by appellant.