CANDLEWICK LAKE UTILITIES COMPANY, Appellant, *v.* ILLINOIS COMMERCE COMMISSION, Appellee (Norman K. Sanders *et al.*, Appellees-Intervenors).

Second District   No. 82—1012

Opinion filed December 27, 1983.—Rehearing denied January 26, 1984.

Michael J. Ventrelle and David G. Taylor, Jr., both of Elmhurst, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and Kathleen Nolan, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

William D. Serwer and Terry F. Moritz, both of Goldberg & Kohn, of Chicago, and Curtis R. Tobin, of Johnson, Tobin & Ramon, of Belvidere, for appellees Norman K. Sanders and Candlewick Lake Association, Inc.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Candlewick Lake Utilities Company, a public utility company which furnishes water and sewer services to the Candlewick Lake Subdivision in Boone County, appeals from the rate order of the Illinois Commerce Commission and from the affirming order of the circuit court. Norman K. Sanders and Candlewick Lake Association, Inc., intervenors, also appear as appellees.

The developer of the subdivision was a partnership consisting of W. L. Belvidere and U. S. Financial Northwest. The developer originally owned the utility but at some time unspecified in the record, the utility plant and its facilities were transferred to W. L. Belvidere. Belvidere organized the present utility corporation, the entire stock of which is owned by W. L. Belvidere, Inc. All of the 2450 lots in the subdivision have been sold by the developer. As of the end of the test year, 1980, slightly more than 100 customers were connected to both the water and sewer system (user customers), with service available to the remaining lot owners (availability customers). The water plant has a capacity of 600 customers and is designed to expand as more of the availability customers make connection to the system. The sewer plant has a capacity of 300 customers and is designed to expand to serve the remaining lots.

Under rates in effect prior to the rate orders which are subject to

this appeal, and in effect since 1974, both availability and user customers were charged $4 per month for water service and $5 per month for sewer services.

On December 24, 1980, the utility filed revised rate schedules seeking a general increase in water and sewer rates, and the Commission set hearings. The utility requested an increase to produce an additional revenue of $63,591 for water services and additional revenues of $294,845 for sewer services.

Following the hearings the Commission entered an order in which it determined that the utility was entitled to receive a 16% rate of return on that portion of its capital that was fully utilized and no return on that portion which was not, resulting in a 4.37% average combined return on common equity capital (original cost rate base) and a return of 3.1% on fair value rate base. The order also made some changes in the monthly charges and the connection charges, disapproved certain expenses claimed by the utility and ordered the utility to institute various steps to improve its quality of service.

The utility filed a petition for rehearing. In the order resulting from the rehearing the Commission reaffirmed that the rate of return granted in the original order, adjusted to reflect certain corrections, would produce a fair return on fair value rate base. The adjustments resulted in an increase in the rate of return to 4.96% on original cost rate base and 3.67% on fair value rate base. Certain changes were also made in monthly charges allowable. The increase approved by the Commission would generate approximately $84,000.

Upon judicial review in the circuit court the orders of the Commission were affirmed in all aspects.

I

The utility first contends that the Commission orders do not allow it a just and reasonable return on its fair value rate base.

Under the provisions of the Public Utilities Act, the Commission is empowered "to ascertain the value of the property of every public utility *** and every fact which in its judgment may or does have any bearing on such value." (Ill. Rev. Stat. 1981, ch. 111⅔, par. 30.) The statute provides that "[a]ll rates or other charges *** shall be just and reasonable" (Ill. Rev. Stat. 1981, ch. 111⅔, par. 32), that the Commission shall establish rates "which it shall find to be just and reasonable" (Ill. Rev. Stat. 1981, ch. 111⅔, par. 36), that "[t]he findings and conclusions of the Commission on questions of fact shall be held prima facie to be true and as found by the Commission," and that its order or decision "shall not be set aside unless it clearly ap-

pears that the finding of the Commission was against the manifest weight of the evidence ***." Ill. Rev. Stat. 1981, ch. 111⅔, par. 72.

The standards for judicial review of the Commission's orders have been well established. Reviewing courts are "empowered only to consider whether the Commission has acted within the scope of its authority, whether any constitutional right has been infringed, and whether its findings are founded on the evidence." (*Cerro Copper Products v. Illinois Commerce Com.* (1980), 83 Ill. 2d 364, 370.) Generally, deference is given to the expertise of the Commission which is presumed to have acted correctly unless its findings clearly are contrary to the manifest weight of the evidence. (83 Ill. 2d 364, 370-71.) "[T]he determination of rates is not a matter of formulas but one of sound business judgment." *Villages of Milford v. Illinois Commerce Com.* (1960), 20 Ill. 2d 556, 561.

The utility is entitled to receive a reasonable return on the present fair value rate base of its property. (*Cerro Copper Products v. Illinois Commerce Com.* (1980), 83 Ill. 2d 364, 369; *Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 379.) The rate must be just and reasonable, " '*** both to the public and to the utility.' " (*Produce Terminal Corp. v. Illinois Commerce Com. ex rel. Peoples Gas Light & Coke Co.* (1953), 414 Ill. 582, 590.) It has been recognized that "[t]he fundamental purpose of providing a particular rate schedule is to generate a rate of return which the Commission has approved as just and reasonable and which will enable the utility to continue operation at an acceptable level of operating income." *Cerro Copper Products v. Illinois Commerce Com.* (1980), 83 Ill. 2d 364, 371.

The primary contention of the utility is that the Commission erred in its method of computing the rate of return in: (1) finding that the utility's plant is not fully utilized, (2) reducing the rate of return from 16% to 4.96% (return on original cost rate base) or 3.67% (return on fair value rate base), and (3) calculating the utility's rate of return using the original cost rate base rather than the fair value rate base. The Commission responds that it determined a reasonable return on the fair value of the utility property by considering all of the evidence and all of the factors listed in its order, and that its decision has a substantial foundation in the evidence.

The Commission's findings of the reasonable rate of return, as adjusted on rehearing, in substance were that 31% of the utility's total facilities "provide actual water and sewer services to customers"; that, although 16% "would be a fair rate of return if [the utility] was a more fully developed utility," it should receive 16% only on the 31%

of its total capitalization actually used and none on the remainder; that this would produce a combined rate of 4.96% on the original cost or approximately 3.67% on the fair value rate base. The original cost rate base was found to be $1,694,834; fair value rate base was found to be $2,292,947. The fair value rate base was calculated by taking 60% of the original cost, 40% of the reproduction cost and adding the figures together.

Section 36 of the Public Utilities Act provides that rates to be "just and reasonable" must provide "*** a reasonable return upon the value of [the] utility's property *used* and *useful* in rendering its service to the public ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 111⅔, par. 36.) The Commission found that all of the utility's property was "used and useful." It argues, however, that "used and useful" applies to the rate base and not to the rate of return; thus, that the rate of return must only be just and reasonable considering the part of the utility's property which is actually used. The Commission acknowledges that it is using a "novel theory" but argues that the ultimate result reached was proper, considering that it would be unfair to require present customers to pay a full return on an investment which has not reached its full potential, thus shifting the risk of the stockholders' investment to the ratepayers "merely because there is no immediate fulfillment of the expectations of the utility investors."

In determining a reasonable rate of return there are many factors to consider, including "[t]he fair value of the utility's property, the existing capital-formation structure, the proposed financing for any construction programs, original cost rate base, operating expenses, revenue and income, and the cost of providing *** service to the various classifications of consumers." *Cerro Copper Products v. Illinois Commerce Com.* (1980), 83 Ill. 2d 364, 371.

■ We are not directly dealing with the issue of whether the combined rate is in itself confiscatory. The significant issue is the application of a zero rate of return to a substantial part of the property of the utility in order to reach a 3.67% return on fair value rate base. We adhere to the principle that the Commission is credited with expertise in reaching a sound business result which is fair to both the utility and the consumer, but cannot justify a granting of no return at all on property which had been included in the fair value rate base as "used and useful."

We also credit the Commission with considerable discretion in determining what property is "used and useful" in providing services, and in determining how this relates to the setting of rates which are "just and reasonable." (*Cf. Citizens For A Better Environment v. Illi-*

*nois Commerce Com.* (1981), 103 Ill. App. 3d 133, 138-39 (construction work in progress may be considered used and useful under appropriate circumstances).) In making this determination the Commission could set a rate which would fail to produce an adequate return to the utility due to the fact that the utility business was not fully developed or was larger than necessary. (*Produce Terminal Corp. v. Illinois Commerce Com. ex rel. Peoples Gas Light & Coke Co.* (1953), 414 Ill. 582, 590-91; *State Public Utilities Com. ex rel. City of Springfield v. Springfield Gas & Electric Co.* (1919), 291 Ill. 209, 218-19.) Both of these cases cited with approval *San Diego Land & Town Co. v. Jasper* (1903), 189 U.S. 439, 47 L. Ed. 892, 23 S. Ct. 571. In *San Diego,* the California statute in question, like Illinois, required the granting of a reasonable rate of return on used and useful property. (189 U.S. 439, 442, 47 L. Ed. 892, 894, 23 S. Ct. 571, 572.) The Supreme Court interpreted the statute to "assume that only a proportionate part of the system was actually used and useful within the meaning of the statute." 189 U.S. 439, 447, 47 L. Ed. 892, 896, 23 S. Ct. 571, 574.

In this case, however, the Commission has included all of the utility's property as used and useful in its rate-base finding. This is supported in considerable degree by the record. All of the lots in the subdivision have been sold by the developer. There was testimony that the user customers were in a slightly larger concentration on the lake, but generally spread throughout the subdivision. Virtually all of the mains had a user customer connected at some point. There was customer availability for all of the lots.

Other courts have also concluded that utility property, although not presently in use, may be considered "used and useful" and included in rate base where the property is necessary to meet foreseeable service requirements of the public. (See *Southern Bell Telephone & Telegraph Co. v. Public Service Com.* (1978), 270 S.C. 590, ____, 244 S.E.2d 278, 284. See also *Citizens For A Better Environment v. Illinois Commerce Com.* (1981), 103 Ill. App. 3d 133, 138-39.) The converse is, of course, also true. If the Commission fairly finds that the property is not in fact presently used and useful but may only be used in the future, it may be excluded from the rate base by the Commission. (*Kansas-Nebraska Natural Gas Co. v. State Corp. Com.* (1980), 4 Kan. App. 2d 674, 678-79, 610 P.2d 121, 126-27; *South Hinds Water Co. v. Mississippi Public Service Com.* (Miss. 1982), 422 So. 2d 275, 283; *Southwestern Public Service Co. v. State of Oklahoma* (Okla. 1981), 637 P.2d 92, 98; see *Columbus Gas & Fuel Co. v. Public Utilities Com.* (1934), 292 U.S. 398, 406, 78 L. Ed. 1327, 1332, 54 S. Ct. 763, 767.) In all of the cited cases, the property in question was found

not to be used and useful and therefore was excluded from the rate base.

■■ The Commission argues that we should not be concerned with the method it used to reach its decision but only with the end result. This approach to the decision by the Commission, however, cannot be explained as mere "methodology." The argument that courts are without power to review the intermediate steps leading to the administrative decision has been rejected as preventing effective judicial review. (*Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 376; *City of Alton v. Illinois Commerce Com.* (1960), 19 Ill. 2d 76, 80-81.) Courts should ordinarily refrain from interfering with the business judgment of the Commission where the record shows a fair consideration of the various factors entering into that judgment. We cannot, however, be confident of or approve the use of a "formula" by the Commission which includes substantial property in the fair value rate base but denies it any return.

The Commission's findings, in our view, are based upon an improper analysis, contrary to the rule of law and must be rejected. Under the circumstances we are required to set aside the order as a whole. *N-Ren Corp. v. Illinois Commerce Com.* (1981), 98 Ill. App. 3d 1076, 1083.

II

To aid in further proceedings we briefly review other questions raised.

A

The utility has argued that the Commission erred in using an original cost rate base rather than a fair value rate base, which is required under the statute. (See, *e.g., Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 375.) The structure of the Commission's findings lends some support to this argument. One of the findings refers to a return of approximately 4.96% on original cost rate base and a return of approximately 3.67% on fair value rate base. (Commission Finding 17.) The Commission suggests that the ultimate finding is based on the fair value theory and that any contrary language should be rejected as surplusage.

■■ The Commission may, in determining a fair rate of return, consider in its intermediate analysis the original cost and the existing capital formation structure. (See *Cerro Copper Products v. Illinois Commerce Com.* (1980), 83 Ill. 2d 364, 371.) It may not, however, rely solely on original cost.

## B

The utility sought to have the $25,000 salary of its president allowed as an expense for rate-making purposes. A Commission staff witness recommended that the officer's salary be reduced to $8,500. The Commission ruled, however, that the salary be eliminated altogether. In its order on rehearing the Commission noted that it based its decision on the unusual circumstances of an absent, nonresident president, the past financial difficulties of the utility including a bankruptcy reorganization, the presence of various management and clerical employees to run the day-to-day operations of the utility, and the fact that the president's duties are undocumented.

■ This issue is to be considered under the guidelines set forth in *Du Page Utility Co. v. Illinois Commerce Com.* (1971), 47 Ill. 2d 550, *cert. denied* (1971), 404 U.S. 832, 30 L. Ed. 62, 92 S. Ct. 74. In *Du Page* the intervenors contended that the Commission should not have allowed any of the officers' salaries in the determination of the rate base, but should have required that they be distributed from profits since the officers performed no valuable services to the utility. The court refused to accept that reasoning since it found no proof that the services were without value to the company. (47 Ill. 2d 550, 560-61.) The record before us does not reflect that the officer's services were of no value; therefore, some portion of his salary should have been included as an operating expense.

## C

We find no error, however, in the Commission's approach to the salary of the general manager and secretary wherein it allocated 10% of the salaries to the utility involved in this case and 90% to a sister corporation, Woodhaven Utility Company, which shared common employees.

## D

The utility also has claimed that legal expenses incurred in various commission and court proceedings should be charged to its ratepayers. Rate case expenses are properly and fairly allowed as an operating expense. (*Du Page Utility Co. v. Illinois Commerce Com.* (1971), 47 Ill. 2d 550, 561, *cert. denied* (1971), 404 U.S. 832, 30 L. Ed. 2d 62, 92 S. Ct. 74.) The Commission in this case allowed the utility a rate case expense of $40,000 amortized over two years. This finding is not in contest. Rather, the "extraordinary expenses" the utility seeks to include were incurred between 1976 and 1980 in proceedings which pertained to customer complaints regarding reasonableness of rates,

the Commission's motion to reconsider its original rate order, and a Chapter 11 bankruptcy. It is the unamortized portion of these extraordinary legal expenses, claimed to approximate $300,000, which is in dispute.

■■ A "rate case" has been defined as "a proceeding, including a formal hearing, which results in a Commission order fixing any of the rates of a utility." (*Washington Gas Light Co. v. Public Service Com.* (D.C. App. 1982), 455 A.2d 384, 389.) While rate case expenses may be charged to the ratepayers, the utility has failed to prove that the proceedings in question were, in fact, rate case proceedings. Therefore the utility's reliance on *Du Page Utility Co. v. Illinois Commerce Com.* (1971), 47 Ill. 2d 550, *cert. denied* (1971), 404 U.S. 832, 30 L. Ed. 2d 62, 92 S. Ct. 74, and *Driscoll v. Edison Light & Power Co.* (1939), 307 U.S. 104, 83 L. Ed. 1134, 59 S. Ct. 715, is misplaced since both cases deal only with rate case expenses.

We have been furnished with no authority either in the statute or in case law allowing extraordinary legal expenses of the nature suggested by the utility. Moreover, we agree with the Commission that these nonrecurring expenses were not shown to be to the benefit of the ratepayers and that there was insufficient proof to show the reasonableness of the charges. The utility has the burden of proving that any operating expense for which it seeks reimbursement directly benefits the ratepayers or the services which the utility renders. See *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461, 482-83.

The judgment of the circuit court of Boone County is reversed and the cause remanded to the Illinois Commerce Commission for further proceedings in accordance with this opinion.

Reversed and remanded.

UNVERZAGT and HOPF, JJ., concur.