THE VILLAGE OF MONTGOMERY, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

Second District   No. 2—92—1186

Opinion filed August 16, 1993.

William C. Murphy, Craig S. Mielke, Joseph C. Loran, and Thomas Hupp, all of Murphy, Hupp, Foote, Mielke & Kinnally, and James R. Edwards, of Edwards, Jordan & O'Connor, both of Aurora, for petitioner.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Darrell S. Townsley and James E. Weging, Special Assistant Attorneys General, of Chicago, of counsel), for respondents.

JUSTICE DOYLE delivered the opinion of the court:

Petitioner, the Village of Montgomery, appeals pursuant to section 10—201 of the Public Utilities Act (220 ILCS 5/10—201(a) (West 1992)) from an order of the Illinois Commerce Commission (Commission) denying Montgomery's petition for rehearing of an order providing final approval for the implementation of an enhanced 911 emergency telephone system submitted by Kendall County. Petitioner raises the following issues: (1) whether the Commission's approval of an enhanced 911 emergency telephone answering system for Kendall County was supported by substantial evidence in the record; and (2) whether section 15.3 of the Emergency Telephone System Act (Emergency Telephone Act) (Ill. Rev. Stat. 1989, ch. 134, par. 45.3 (now codified, as amended, at 50 ILCS 750/15.3 (West 1992))) should be applied retroactively so as to allow Montgomery to disconnect from the Kendall County system. Respondents, County of Kendall and the Commission, have filed a motion to dismiss for lack of jurisdiction, which was ordered taken with the case.

The Village of Montgomery is situated partly in Kane County and partly in Kendall County. The dispute in this case centers around the inclusion of the Kendall County portion of Montgomery in Kendall County's enhanced 911 emergency telephone system.

Located within the Montgomery police department is a public safety answering point (PSAP) which directly dispatches the Montgomery police. A public safety answering point is the initial answering point for incoming 911 emergency calls (83 Ill. Adm. Code §725.103 (1991)), and direct dispatch is defined as a 911 service which

provides for the direct dispatch by a PSAP telecommunicator of the appropriate unit(s) upon receipt of a telephone request for such services and the decision as to the proper action to be taken (83 Ill. Adm. Code §725.103 (1991)). Unlike its police services, Montgomery's fire and emergency medical services (EMS) are dispatched from a PSAP located in Kendall County. Montgomery does not provide its own fire and EMS services; instead, those services are provided by the Oswego fire department, which is located in Kendall County.

In November 1988, the constituents of Kendall County, including those located in Montgomery, voted by referendum to impose a surcharge providing for the establishment of a countywide 911 system. As it existed then, section 15.3 of the Emergency Telephone Act, which governed the imposition of telecommunication surcharges for the purpose of installing or improving 911 emergency telephone services, made no special provision for municipalities that were located in more than one county. See Ill. Rev. Stat. 1987, ch. 134, par. 45.3 (now codified, as amended, at 50 ILCS 750/15.3 (West 1992)).

Following passage of the referendum, Kendall County, on April 6, 1989, published notices stating that it was filing an application with the Commission for the approval of an enhanced 911 emergency telephone system. The filing would indicate that the system would operate on a countywide basis and be available to all residents of Kendall County.

On April 27, 1989, the Kendall County emergency telephone systems board filed its original petition for approval of its final plan with the Commission. The final plan provided that incoming 911 calls would be answered at the PSAP located at the Kendall County public safety building in Yorkville, Illinois. The net effect of the proposed plan would result in Montgomery's fire and EMS calls being dispatched directly by the Kendall PSAP, as before. Its police calls, however, to the extent that such calls emanated from the Kendall County portion of Montgomery, would be transferred from the Kendall PSAP to the Montgomery PSAP and then dispatched. In contrast, the Kane County portion of Montgomery would continue to have its police calls dispatched directly from the Montgomery PSAP. The thrust of Montgomery's complaint before the Commission was that by having a portion of Montgomery under the Kendall County system, and the remaining portion under a different system, a disparity in police emergency response times would exist between residents located in the Kendall County portion and those in the Kane County portion.

On October 15, 1990, the Commission conducted the first in a series of hearings on Kendall County's petition for approval. When

asked why Kendall County was so determined about serving Montgomery, James Fatz, an employee of the Kendall County sheriff's department, testified that Kendall County wanted the best for its residents. Fatz further stated that, historically, he was uncertain why law enforcement calls had been a determining factor as to which PSAP would provide coverage. According to Fatz, it was the board's opinion that personal safety, ambulance calls, and fire safety were the most time critical calls, and although the volume of law enforcement calls was greater, the "criticality" of those calls was not as significant.

Dennis Schmidt, police chief for the Village of Montgomery, stated for the record that the village's position was summed up in the letters he and others sent to the Commission. Schmidt further stated that since the mid 1970's, when Montgomery began dispatching, the village had been a part of the Aurora 911 center. All of the calls over the years, whether they originated in the Kane portion or the Kendall portion, had been routed to the Aurora center and then speed dialed or call transferred back to the Montgomery police department dispatching center. The record is not clear, although it appears that emergency police calls, at least as to the Kane portion of Montgomery, were, at the time of the hearings before the Commission, being directly dispatched from the Montgomery PSAP. According to every 911 center person spoken with, 8 out of 10 calls were police related. Speaking apparently on behalf of Montgomery, Schmidt further stated that the best and most efficient service, using the technology then available, was the one requiring the least number of transfer calls. Schmidt further expressed Montgomery's concern about the possibility of service interruption.

At the close of the hearing, the examiner stated that he wanted to make known to the parties that he received three letters, one each from the president of Montgomery, the chairman of the Kane County emergency telephone systems board, and the police chief of Montgomery, which he considered *ex parte* communications. The thrust of the three letters was to express objection to the implementation of Kendall County's enhanced 911 system. The hearing examiner stated that he would make the letters part of the correspondence file, and, having brought them to the attention of the parties, they were no longer considered *ex parte* communications. The letters were not offered or admitted into evidence, and the hearing was continued.

On December 14, 1990, James Fatz testified that since the hearing on October 15, 1990, representatives of the Kendall County operations board met with representatives of Montgomery, and, after discussing several alternate phone answering options, Montgomery

remained resolute in its insistence that the phone lines terminate at the Montgomery PSAP.

Gene Keck, a communications supervisor for the Lemont police department, testified that he assisted in the implementation of the enhanced 911 program. Keck further testified, over Kendall County counsel's objection, that he spoke with his counterparts in the States of Texas, Minnesota, Florida, and Michigan about the termination of calls. Keck stated that when the problem arose in those States, it was solved by terminating the calls at the station with the most calls, which was always a police jurisdiction.

On September 5, 1991, the Commission entered its interim order authorizing the plan submitted by Kendall County. The interim order stated, in part, that Montgomery objected to being included in the Kendall County plan because of its desire to have 911 calls requiring police attention handled directly by its own PSAP. The order further stated that if Montgomery were excluded from the Kendall County system, police calls would be handled directly from the Montgomery PSAP, but fire and EMS calls would have to be forwarded from the Kendall PSAP to the Montgomery PSAP. The order further provided:

> "Under the [Emergency Telephone Act], a municipality may opt out of a proposed system before its citizens vote on a surcharge. [Ill. Rev. Stat. 1989, ch. 134, par. 45.3.] The Village of Montgomery did not elect to exclude itself from the Kendall County system. It is now asking to be excluded after its citizens that reside in Kendall County voted in the Kendall County surcharge referendum."

The order further recited that the Commission was of the opinion that the Montgomery residents situated in Kendall County must become a part of the Kendall County system. The order explained that under any scenario, some calls would have to be transferred; however, the evidence indicated that the transfer process was extremely efficient and should not pose any problems.

Montgomery's petition for rehearing was subsequently denied, and its first appeal to this court was dismissed for lack of appellate jurisdiction on the grounds that the order appealed from was not a final order of the Commission. (*Village of Montgomery v. Kendall County* (2d Dist., December 12, 1991), No. 2—91—1284 (unpublished order, dismissed on parties' motions).) Following additional hearings, the Commission, on March 18, 1992, entered its final order approving Kendall County's application for approval of its enhanced 911 system. Montgomery's petition for rehearing was denied, and Montgomery filed its appeal with this court.

Initially, the Commission challenges the jurisdiction of this court to hear Montgomery's appeal. The Commission's primary contention is that because the Emergency Telephone Act (50 ILCS 750/0.01 *et seq.* (West 1992)) does not provide for any method of judicial review, this court lacks jurisdiction. The Commission argues that section 10—201 of the Public Utilities Act (Utilities Act) (220 ILCS 5/10—201 (West 1992)) does not allow appellate review of Commission orders issued under the Emergency Telephone Act because the Emergency Telephone Act, unlike other statutes, fails to adopt expressly the appellate review procedures outlined in the Utilities Act. Petitioner responds (1) that the close interrelation of the Utilities Act and the Emergency Telephone Act evinces the legislature's intent that parties utilize the procedures for appellate review outlined in the Utilities Act; (2) that the Commission should be estopped from challenging jurisdiction; and (3) that the supreme court has implicitly recognized the appellate procedure in the Utilities Act as applicable to appeals brought from orders issued under the Emergency Telephone Act.

Section 10—201 of the Utilities Act provides, in relevant part:

"§10—201. (a) Jurisdiction. Within 30 days after the service of any order or decision of the Commission refusing an application for a rehearing of any rule, regulation, order or decision of the Commission, *** any person or corporation affected by such rule, regulation, order or decision, may appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated *** for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and determined." 220 ILCS 5/10—201 (West 1992).

■ The statutory language utilized by the legislature is usually the best indication of the drafter's intent (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111), and the language employed should be assigned its plain or ordinary and popularly understood meaning (*Collins,* 155 Ill. 2d at 111). It should be assigned the fullest rather than narrowest meaning to which it is susceptible. (*Collins,* 155 Ill. 2d at 111.) The Emergency Telephone Act expressly charges the Commission with establishing a general overview or plan to effectuate the purposes of the Act (50 ILCS 750/7 (West 1992)) and commands the Commission, with the advice and assistance of the Attorney General, to coordinate the implementation of systems established under the Emergency Telephone Act (50 ILCS 750/8 (West 1992)). The plain language of section 10—201 expressly refers to *any* order or decision of the Commission. Accord-

ing the statutory language its fullest possible meaning leads to the conclusion that the legislature intended to include orders entered by the Commission under the Emergency Telephone Act to be subject to the appellate review provisions in section 10—201 of the Utilities Act.

Moreover, the broad grant of authority to the Commission under the Emergency Telephone Act when read in combination with the express language of section 10—201 providing for appellate review from *any* order or decision of the Commission further supports the conclusion that the legislature intended to vest this court with jurisdiction to review orders entered by the Commission under the Emergency Telephone Act. The absence of an express provision for judicial review within the Emergency Telephone Act does not necessarily imply that the legislature intended that there be no judicial review under the Emergency Telephone Act. In fact, although not entirely inconceivable, it seems unlikely that the legislature intended to insulate orders under the Emergency Telephone Act from judicial review. This is significant when it is considered that the Emergency Telephone Act mandates the implementation of emergency telephone services for many local public agencies. See 50 ILCS 750/3 (West 1992).

Finally, the fact that other statutes might expressly provide for specific methods of review of Commission decisions other than section 10—201 does not compel a different conclusion. Rather, this merely demonstrates that the legislature intended review of orders under differing acts to be reviewed by means other than that provided under the otherwise comprehensive language of section 10—201. Accordingly, we conclude that this court has jurisdiction to hear the present appeal.

Montgomery's first contention is that the findings of the Commission in its March 18, 1992, order were not supported by substantial evidence in the record. The Commission responds that Montgomery waived the issue of sufficiency by failing to raise it in its petition for rehearing before the Commission. Section 10—113 of the Utilities Act provides, in relevant part:

"No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission." (220 ILCS 5/10—113 (West 1992).)

It is incumbent upon the party seeking review to specify in a petition for rehearing where the Commission erred so as to allow it an opportunity to correct the error (*Meinhardt Cartage Co. v. Illinois Commerce Comm'n* (1959), 15 Ill. 2d 546, 550-51), and the allegations in the petition must be sufficiently specific to apprise the Commission and opposing parties of the actual points relied upon (*Meinhardt*, 15

Ill. 2d at 551; *City of Granite City v. Illinois Commerce Comm'n* (1950), 407 Ill. 245, 250). In its petition for rehearing before the Commission, Montgomery contended (1) that the Emergency Telephone Act as it existed at the time of the 1988 referendum did not allow the residents of Montgomery to "opt out" of the Kendall County system and that the Commission erred in not allowing it that option under a statutory successor; and (2) that the interim order entered by the Commission, which was later incorporated into the March 18, 1992, final order, was premised upon faulty logic because it ignored certain facts.

On appeal, Montgomery initially contends that (1) there was no evidence in the record to support a finding that the Kendall County system met the standards enunciated in section 725.401(a) of the Illinois Administrative Code for the operation of emergency telephone systems (83 Ill. Adm. Code §725.401(a) (1991)); and (2) that the conclusion reached by the Commission is illogical when considering the facts as presented. Petitioner then concludes in a generalized manner that this court should reverse the order of the Commission because "[its] findings are not supported by the substantial evidence in the record."

■ Based upon our review of Montgomery's petition for rehearing, we conclude that Montgomery has waived any issue regarding Kendall County's failure to present evidence demonstrating compliance with the standards of operational service requirements elucidated in section 725.401(a) of the Illinois Administrative Code. At no place in its petition for rehearing did Montgomery expressly or implicitly contend that Kendall County's failure to introduce evidence on compliance with the operational standards supported its conclusion that the Commission's findings were not supported by evidence in the record. Accordingly, that portion of its argument is waived; nevertheless, we will consider Montgomery's contention to the extent that it has otherwise raised a challenge to the Commission's findings as not being supported by substantial evidence in the record.

■ It is well established that the Commission's findings on questions of fact are *prima facie* true, and its orders are *prima facie* reasonable. (220 ILCS 5/10—201(d) (West 1992); *Moncada v. Illinois Commerce Comm'n* (1991), 212 Ill. App. 3d 1046, 1051-52.) A reviewing court may not overturn a Commission rule, regulation, order or decision unless the Commission is without jurisdiction, its order is not supported by substantial evidence on the record or the order or manner in which it was decided violates Federal or State constitutional laws to the prejudice of the appellant. (220 ILCS 5/10—201(e)(iv)

(West 1992); *Moncada*, 212 Ill. App. 3d at 1052.) The party challenging the Commission's order, however, carries the burden of proof. (*People v. ex rel. Hartigan v. Illinois Commerce Comm'n* (1992), 148 Ill. 2d 348, 367.) The Commission's interpretation of a question of law is not binding on a reviewing court. (*Hartigan*, 148 Ill. 2d at 367.) Viewing the record as a whole, we conclude that the Commission's findings, to the extent its findings are challenged by Montgomery, are supported by substantial evidence on the record.

In its interim order, which was later incorporated into its final order, the Commission found, in part, that under any scenario, some calls would have to be transferred. Neither party disputes this finding. The Commission further found that the evidence indicated that the transfer process was extremely efficient and should not pose any problems. Montgomery does not challenge the Commission's findings on the ground that any system installed by Kendall County would lack the necessary technological capability or sophistication; instead it argues that the Commission's determination was faulty because any system which sought quickly and efficiently to provide emergency services should determine its PSAP location on the basis of where the majority of calls are terminated, which in this case would be calls for police assistance. Montgomery further contends that the Kendall system would require longer emergency response times for the Kendall portion of Montgomery and that the proposed system would engender administrative confusion and endanger the lives and property of its citizens. At the hearings before the Commission, Montgomery offered no evidence in support of its conclusions. More significantly, the hearing examiner heard the testimony of James Fatz which supports the conclusion that it was not necessarily the majority of phone calls that was determinative; rather, the more important consideration was where fire and EMS calls terminated. On appeal, Montgomery cites no rule or statute indicating a legislative or agency preference for the termination of calls. Although Montgomery presented testimony and an exhibit suggesting that such a preference exists in other jurisdictions, where the issue merely involves conflicting testimony and credibility of witnesses, the agency's determination should be upheld. (*Komarec v. Illinois Department of Labor* (1986), 144 Ill. App. 3d 1105, 1108.) Moreover, contrary to Montgomery's suggestion in its reply brief, it would be improper for this court to engage in any inquiry into the efficiencies of the Kendall County system because it is not within the province of a reviewing court to reweigh the evidence presented or substitute its judgment for that of the Commission. (See *City of Champaign v. Illinois Commerce Comm'n* (1991), 209 Ill. App.

3d 1070, 1076.) Finally, we note that to the extent that the order of the Commission did not comment upon the evidence presented by Montgomery, it does not necessarily follow that such evidence was not considered by the Commission. (See *Chicago North Shore & Milwaukee R.R. Co. v. Commerce Comm'n* (1933), 354 Ill. 58, 73-74.) Accordingly, we conclude that the Commission's findings of fact were supported by substantial evidence on the record.

■ Respondents further contend that this court should not consider references in Montgomery's brief to *ex parte* communications from the president of Montgomery and the chairman of the Kane County emergency telephone systems board objecting to the proposed 911 system as presented by Kendall County. Although respondents characterize their argument in terms of issue waiver, we interpret it to be more in the nature of a motion to strike from petitioner's brief references to those communications. Respondents argue that although the offending *ex parte* nature of the communications was assuaged by the hearing examiner's disclosure, as required under the Commission rules of practice (see 83 Ill. Adm. Code §200.710(c) (1991); Ill. Rev. Stat. 1989, ch. 127, par. 1015 (now codified, as amended, at 5 ILCS 100/10—60 (West 1992))), the use of the letters as substantive evidence is barred from consideration under former section 11 of the Illinois Administrative Procedure Act (Procedure Act) (see Ill. Rev. Stat. 1989, ch. 127, par. 1011(a)(8)). Montgomery responds that because the hearing examiner's disclosure of the communications removed their *ex parte* nature, the letters were no longer precluded from consideration as the basis for a finding of fact.

We begin by noting that the Procedure Act (5 ILCS 100/1—1 *et seq.* (West 1992)) is applicable to hearings before the Commission (220 ILCS 5/10—101 (West 1992)) and that former section 12 of the Procedure Act provided that the rules of evidence and privilege as applied in civil cases in the circuit courts shall be followed (Ill. Rev. Stat. 1989, ch. 127, par. 1012 (now codified, as amended, at 5 ILCS 100/10—40 (West 1992))). Additionally, section 10—103 of the Utilities Act (220 ILCS 5/10—103 (West 1992)) expressly provides that any finding, decision or order made by the Commission shall be based exclusively on the record for decision in the case, which shall include only the transcript of testimony and exhibits together with all papers and requests filed in the proceeding, including, in contested cases, the documents described in section 11 of the Procedure Act. Prior to its amendment, former section 11 of the Procedure Act provided, in relevant part:

"§11. Record in Contested Cases. (a). The record in a contested case shall include:

\* \* \*

8. any communication prohibited by Section 15 of this Act, but such communications shall not form the basis for any finding of fact.

\*\*\*

(c). Findings of fact shall be based exclusively on the evidence and on matters officially noticed." Ill. Rev. Stat. 1989, ch. 127, par. 1011 (now codified, as amended, at 5 ILCS 100/10—35 (West 1992)).

The *ex parte* rules of the Procedure Act expressly proscribe direct and indirect communications between agency members, employees or hearing examiners and any person or party, following notice of hearing in a contested case, except upon notice and opportunity for all parties to participate. (Ill. Rev. Stat. 1989, ch. 127, par. 1015 (now codified, as amended, at 5 ILCS 100/10—60 (West 1992)).) Section 10—103 of the Utilities Act makes the *ex parte* communication rules of the Procedure Act fully applicable to proceedings before the Commission. (220 ILCS 5/10—103 (West 1992).) Additionally, section 200.710 of the Illinois Administrative Code directs that when a hearing examiner becomes aware that he or she has received a prohibited communication, the communication shall be disclosed by placing it in the record. 83 Ill. Adm. Code §200.710(c) (1991).

Based upon the foregoing, we conclude that in a contested case, mere disclosure of an *ex parte* communication does not transform such material into competent evidence before an administrative tribunal. To hold otherwise would be tantamount to a wholesale evisceration of the provisions requiring adherence to the rules of evidence for the circuit courts and that findings of fact be based upon evidence in the record. When ascertaining the meaning of a statute, it should be read as a whole with all relevant parts considered, and it should be construed so that no word or phrase is rendered superfluous or meaningless. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.) Accordingly, mere disclosure of the offending letters did not address the threshold evidentiary requirements of admissibility. As a rule, findings must be based on evidence introduced in the case, and nothing can be treated as evidence which is not introduced as such. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 378.) Any reliance, therefore, upon the contents of the offending letters as substantive evidence would be improper, and we will disregard any references in Montgomery's brief made for that purpose.

●5 We turn now to address petitioner's remaining contention that it should be allowed the opportunity to disconnect from the Kendall County system. The Emergency Telephone System Act (Emergency Telephone Act) was enacted by the General Assembly to encourage governmental authorities to develop and improve emergency communication procedures and facilities so as to enable emergency service agencies the ability to respond quickly to calls for assistance. (50 ILCS 750/1 (West 1992).) The Emergency Telephone Act requires every local public agency in a county having 100,000 or more inhabitants to implement a basic or sophisticated system. (50 ILCS 750/3 (West 1992).) The Emergency Telephone Act further encourages other public agencies to establish emergency systems and expressly provides that those agencies are entitled to participate in State-sponsored funding. (50 ILCS 750/3 (West 1992).) A "[p]ublic agency" is defined to include any unit of local government which has authority to provide fire fighting, police, and other emergency services. 50 ILCS 750/2.01 (West 1992).

In order to provide the funding necessary to implement an emergency telephone answering system, the Emergency Telephone Act authorizes, following approval by referendum, the corporate authorities of any county to impose a monthly surcharge on the billed subscribers of network connection provided by telecommunication carriers. (Ill. Rev. Stat. 1989, ch. 134, par. 45.3(a) (now codified, as amended, at 50 ILCS 750/15.3 (West 1992)).) The imposition of a surcharge under section 15.3 further mandates the establishment of an emergency telephone system board, whose duties include receiving monies from the surcharge imposed under section 15.3 and the deposit of those monies into an emergency telephone system fund. (Ill. Rev. Stat. 1989, ch. 134, par. 45.4 (now codified, as amended, at 50 ILCS 750/15.4 (West 1992)).) The purpose underlying section 15.3, therefore, is to provide a mechanism to fund the establishment of emergency telephone systems.

Prior to its amendment in 1989, section 15.3 of the Emergency Telephone Act did not address the circumstance of a single municipality being physically situated within more than one county. (See Ill. Rev. Stat. 1987, ch. 134, par. 45.3.) The Kendall County referendum was conducted during the time that the earlier version of the statute was operative. The General Assembly subsequently amended section 15.3(a) of the Emergency Telephone Act to address this circumstance. (See Ill. Rev. Stat. 1989, ch. 134, par. 45.3 (now codified, as amended, at 50 ILCS 750/15.3 (West 1992)).) The statute, as amended, provided, in part:

"§15.3. (a) The corporate authorities of any municipality or any county may *** impose a monthly surcharge on billed subscribers of network connection provided by telecommunication carriers engaged in the business of transmitting messages by means of electricity originating within the corporate limits of the municipality or county imposing the surcharge at a rate per network connection determined in accordance with subsection (c). A municipality may enter into an intergovernmental agreement with any county in which it is partially located, when the county has adopted an ordinance to impose a surcharge as provided in subsection (c), to include that portion of the municipality lying outside the county in that county's surcharge referendum. If the county's surcharge referendum is approved, the portion of the municipality identified in the intergovernmental agreement shall automatically be disconnected from the county in which it lies and connected to the county which approved the referendum for purposes of a surcharge on telecommunications carriers." Ill. Rev. Stat. 1989, ch. 134, par. 45.3 (now codified, as amended, at 50 ILCS 750/15.3 (West 1992)).

Unlike its predecessor, the amended version prescribes a statutory procedure for allowing municipalities situated in more than one county to elect to be included within a particular county's emergency telephone answering system, provided that the prescribed requirements are met. Montgomery contends that the amended version of section 15.3 should be applied retroactively so as to allow Montgomery to "opt out" of the Kendall County system. Montgomery argues that the Commission, in its order, bound Montgomery to the 1988 Kendall County referendum for allegedly failing to make an election under the amended version of section 15.3. The amendment, however, was not effective until 1989, *i.e.*, following the Kendall County referendum. Respondents contend that (1) the Commission was correct in concluding that there was no legal basis for allowing detachment after the Kendall County referendum took place; (2) that the Emergency Telephone Act does not provide the Commission with authority to order detachment following passage of the referendum; (3) that Montgomery's situation is largely the result of its own doing by failing to "opt in" to the Kane County system; and (4) that the 1989 amendment should not be applied retroactively.

Applying amended section 15.3, and assuming, *arguendo*, its applicability, in order for the Kendall portion of Montgomery to be included within the proposed or existing system for Kane County, Kane County would first adopt an ordinance allowing for the surcharge. It

would then be incumbent upon Montgomery to enter into an intergovernmental agreement with Kane County to include the Kendall portion of Montgomery within Kane County's surcharge referendum. Assuming approval of the referendum, the Kendall portion would be automatically disconnected from the Kendall County system and connected to the Kane County system. Although this procedure was not operative at the time of the Kendall County referendum, we take judicial notice of the fact that the Kane County voters subsequently approved an emergency telephone system in 1989. There was no evidence presented by Montgomery at the Commission hearings to suggest that it attempted at the time of the Kane County referendum to avail itself of the statutorily mandated procedure. Instead, Montgomery urges an interpretation of section 15.3 which would allow it to disconnect from the Kendall system, after the Kendall surcharge referendum, and then seek to enter either subsequently or contemporaneously into an intergovernmental agreement with Kane County. In interpreting a statute, the primary rule, to which all other rules subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. (*Collins*, 155 Ill. 2d at 111; *Kraft*, 138 Ill. 2d at 189.) Legislative intent is best evidenced by the language used by the legislature, and where an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. *Kraft*, 138 Ill. 2d at 189.

The clear and unambiguous language of section 15.3 does not evidence a legislative intent consistent with Montgomery's interpretation, and we refuse to read into it an exception which would allow Montgomery to disconnect from the Kendall system following approval of the Kendall surcharge referendum. Notwithstanding Montgomery's correct assertion that the hearing examiner erred in finding that Montgomery could have elected to exclude itself from the Kendall County system at the time of the referendum in 1988, there was nevertheless no legal basis, in either the earlier or amended versions of the statute, upon which the Commission could order detachment following the Kendall County referendum. Accordingly, even if the amendment to section 15.3 were to be applied retroactively, the amended statute provided no legal basis upon which to grant Montgomery relief. The plain language of the statute makes clear that it was incumbent upon Montgomery to follow the statutorily mandated procedure in order to *opt in* to the Kane County system. There is no language to suggest that the Commission was vested with the authority to order disconnection following passage of the referendum. Fi-

nally, we note that the record suggests that Montgomery had the opportunity to opt in to the Kane system in 1989, which action would have been consistent with the clear language in amended section 15.3, yet apparently failed to avail itself of that opportunity. Accordingly, we refuse to overturn the order of the Commission, where the statute provides no legal basis for granting Montgomery relief.

For the foregoing reasons, the order of the Illinois Commerce Commission approving the final plan for implementation of an enhanced 911 emergency telephone system for Kendall County is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.