ILLINOIS-AMERICAN WATER COMPANY, as Successor in Interest to Citizens Utilities Company of Illinois, d/b/a Citizens Water Resources, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION, Respondent-Appellee.—NATIONAL ASSOCIATION OF WATER COMPANIES, Illinois-Missouri Chapter, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION, Respondent-Appellee.

Second District Nos. 2—01—0746, 2—01—0752 cons.

Opinion filed June 28, 2002.

Stephen J. Mattson, Michele L. Odorizzi, Kara K. Gibney, and Angela D. O'Brien, all of Mayer, Brown, Rowe & Maw, of Chicago, and Lee Ann Conti, of Citizens Communications Company, of Woodridge, for petitioner Illinois-American Water Company.

Boyd J. Springer and Eacata D. Gregory, both of Jones, Day, Reavis & Pogue, of Chicago, for petitioner National Association of Water Companies, Illinois-Missouri Chapter.

James E. Ryan, Attorney General, of Chicago (John P. Kelliher, Special Assistant Attorney General, of counsel), for respondent Illinois Commerce Commission.

JUSTICE McLAREN delivered the opinion of the court:

Petitioners, Illinois-American Water Company, as successor in interest to Citizens Utilities Company of Illinois, d/b/a Citizens Water Resources (Citizens), and National Association of Water Companies, Illinois-Missouri Chapter (Association), appeal a decision by respondent, Illinois Commerce Commission (the Commission), disapproving of an agreement between Citizens and a developer, Terra Cotta Company. We affirm.

Citizens was the original petitioner in case No. 2—01—0746. On February 19, 2001, we granted the motion of Citizens to substitute Illinois-American Water Company as the petitioner in this proceeding. For reasons of simplicity and the accuracy of historical fact, we will continue to refer to the petitioner in case No. 2—01—0746 as Citizens.

The following facts are taken from the record. Citizens is a public utility that provides water and sewer service in six counties in northeastern Illinois. Terra Cotta is the owner and developer of 1,400 acres to be developed with single-family homes, town homes, and a business park in Prairie Grove. On this property, Terra Cotta built a

500,000-gallon elevated water storage tank, two wells, a well house and lift station, water and sanitary mains, and a 100,000-gallon-per-day water reclamation facility.

On February 16, 2000, Terra Cotta and Citizens entered into an agreement for the sale of Terra Cotta's water and sewer facilities. Citizens petitioned the Commission for a certificate of public convenience and necessity (certificate) to provide water and sanitary sewer services to a new development in McHenry County. The Commission granted the certificate. Citizens also requested approval of the agreement between it and Terra Cotta. The agreement between Terra Cotta and Citizens provided that Citizens would receive the water facilities for no money down and then would reimburse Terra Cotta for these facilities as new customers were added. However, regarding the sewer facilities, Citizens would receive the existing facilities for approximately $1.4 million, without any reimbursement as new customers were added. Terra Cotta also agreed to finance all future expansions of the sewage treatment plant.

Under the Commission's regulations, when water service is extended to new customers, the utility is required to provide all water supply (backbone) plants at its own cost and without contribution from developers or customers. 83 Ill. Adm. Code § 600.370(a) (1996). However, if "extensive" plant additions need to be constructed before customers can be attached to the system, the utility can require advance funding from a developer. 83 Ill. Adm. Code § 600.370(a) (1996). In such a case, the utility is required to refund the developer's advances over time as new customers are attached. 83 Ill. Adm. Code § 600.370(a) (1996). Utilities and developers can negotiate agreements regarding the advances, but such agreements must be approved by the Commission. 83 Ill. Adm. Code § 600.370(a) (1996). At the hearing before the Commission, Reed T. Scheppmann, Citizens' vice president and general manager, testified that the parties negotiated at arm's length and Terra Cotta did not object to the terms of the agreement. Scheppmann stated that, if the agreement was approved, the rates charged for sewer service to Terra Cotta customers would be lower than they would be if Citizens had to make an investment in new sewer facilities in the development.

Roy King, a utility engineer for the Commission, testified that the provision in the agreement relating to the sewer facilities was not reasonable because it did not provide for a refund to Terra Cotta for the cost of constructing the sewer facilities. King explained that the purpose of a public utility is to permit a group of investors to make an investment in a utility service, provide that service, and then recover reasonable operating expenses and a reasonable return. The regula-

tions serve as a substitute for competition, since competition is not practical for most public utilities because of the cost of building a system. The regulations serve to insure that utilities do not amass significant assets with little or no investment. Rather, utilities should bear the cost of the facilities they use to provide service. King stated that the agreement at issue would give Citizens over $1.4 million worth of sewer facilities without Citizens' making any investment. King opined that the potential for such gain, while decreasing an investor's liability in the operation, would increase the likelihood for poor service. Yet, King acknowledged that "Citizens has consistently demonstrated that they can provide adequate, reliable and efficient service to their customers" and that Citizens' purchase of Terra Cotta's water and sewer facilities was the "least-cost method of providing service to the customers."

In rebuttal testimony, Scheppmann testified that there was no regulation requiring a refund to developers for sewer facilities. Further, a refund by Citizens to Terra Cotta customers would result in higher rates.

The Commission denied the petition seeking approval of the agreement because it did not provide for a refund to Terra Cotta for the cost of the sewer plant facilities. The Commission interpreted section 600.370(a) (which did not expressly pertain to sewer facilities) as requiring reimbursement, applicable to both water and sewer facilities. The Commission reasoned:

"[It] [h]ad no difficulty interpreting Section 600.371(a) as also pertaining to sewer supply plant [*sic*] to protect against the same unjust enrichment and to protect the same consumer interests as would result if refunds were not provided for water supply plant [*sic*]. To interpret Section 600.370(a) otherwise would permit [Citizens] or any other utility to amass sewer facilities entirely risk free, obviously frustrating at least part of the purpose for which the Section was enacted."

The Commission stated that it did not regard the findings of an unrelated 1995 Citizens' case to be controlling.

Following the Commission's decision, the National Association of Water Companies, Illinois-Missouri Chapter, sought leave to intervene. Both Citizens and the Association filed applications for a rehearing. The Commission denied these applications. Both Citizens and the Association filed timely appeals. The appeals have been consolidated.

Citizens argues that the Commission erred by refusing to approve the agreement between the parties. Citizens asserts that the Commission had no authority to pass judgment on Citizens' agreement with Terra Cotta. We note that, on appeal, the Association does not raise

any arguments not raised by Citizens. Thus, our analysis also applies to the Association's arguments contained in its briefs.

■ The purpose of the Public Utilities Act (220 ILCS 5/1—101 *et seq.* (West 1998)) is to maintain control over the operation of utilities so as to prevent them from exacting unjust, unreasonable, and discriminatory rates. 220 ILCS 5/1—101 *et seq.* (West 1998); *Bloom Township High School v. Illinois Commerce Comm'n*, 309 Ill. App. 3d 163, 175 (1999). In enacting the Public Utilities Act, the legislature intended, *inter alia*, to ensure:

"(d) Equity: the fair treatment of consumers and investors in order that
    (i) the public health, safety and welfare shall be protected[.]"
220 ILCS 5/1—102(d)(i) (West 1998).

Accordingly, "[e]ach agreement for such an advance or revenue guarantee [for supply plants] must be submitted to the Commission for its approval." 83 Ill. Adm. Code § 600.370(a) (1996).

■ Here, the agreement involved the sale of both water supply plant facilities and sewer plant facilities. Therefore, it was subject to the approval of the Commission. Citizens attempts to use the regulation to limit the broad regulatory authority of the Commission granted by statute. We recognize that section 600.370(a) does not require review of agreements for sewer facilities. However, the absence of this language does not preclude the Commission from reviewing the entire agreement. The sewer facilities provisions in the agreement are part of a larger agreement providing a plan that would allow Citizens to take over the *entire* water system at Terra Cotta, including purchasing the water supply plant. Thus, the Commission had authority to review the entire agreement. In rendering its decision, the Commission attempted to consider the agreement consistently with the legislative intent of promoting fairness and equity while eliminating competition of water utility services.

■ Next, Citizens argues that, by applying section 600.370(a) to sewer facilities, the Commission changed its rule without following the proper procedures. The Illinois Administrative Procedure Act (5 ILCS 100/1—5 *et seq.* (West 1998)) provides that "[b]efore the adoption, amendment, or repeal of any rule, each agency shall accomplish the actions required by Section 5—40, 5—45, or 5—50, whichever is applicable." 5 ILCS 100/5—35(a) (West 1998). Each of those sections sets forth procedures for giving advance notice of proposed rule changes and soliciting comments from interested parties. Section 10—101 of the Public Utilities Act provides:

"Any proceeding intended to lead to the establishment of policies, practices, rules or programs applicable to more than one utility

may \*\*\* be conducted pursuant to either rulemaking or contested case provisions, provided such choice is clearly indicated at the beginning of such proceeding and subsequently adhered to." 220 ILCS 5/10—101 (West 1998).

We agree with Citizens that the Commission may not change a rule without adhering to the proper procedures and that such procedures were not followed in this case. However, the Commission certainly had the authority to determine the reasonableness of the particular agreement at issue and to disapprove of the agreement without the creation or formulation of a new rule. Despite the broad language of its decision, the Commission did not and could not exact a rule change applicable to all utilities. Rather, the decision controls only the agreement that was before it. The fact that the Commission looked to section 600.370(a) to determine the fairness and reasonableness of the agreement at issue does not make the decision invalid. The interpretation of the Commission is consistent with its statutorily authorized regulatory powers. Citizens interprets section 600.370(a) as limiting such broad regulatory authority, but we deem that interpretation unreasonable and in derogation of the broad grant of authority made by the legislature.

■ Citizens also argues that the Commission's decision is not consistent with its prior interpretations of section 600.370(a), which held that the section does not apply to sewer plants. Citizens cites to a 1995 decision to support its argument, *Citizens Utilities Co. of Illinois*, Ill. Com. Comm'n Rep. No. 94—0481 (September 13, 1995). In that case, the Commission stated that section 600.370(a) applied only to water plants and not to sewer service.

Citizens fails to recognize that the Illinois Commerce Commission's orders have no *res judicata* effect in subsequent proceedings. The Commission is not a judicial body, but a regulatory body, and as such it must have the authority to address each matter before it freely, even if the matter involves issues identical to those in a previous case. *Illinois-American Water Co. v. Illinois Commerce Comm'n*, 322 Ill. App. 3d 365, 368 (2001). Even if the Commission's order in this case is a departure from a prior decision, it is squarely within its authority to make two different determinations in two separate cases that each have different sets of facts.

■ Citizens further posits that the Commission's decision was not supported by substantial evidence. On appeal, we must give deference to the Commission's decisions because such decisions are " 'judgment[s] of a tribunal appointed by law and informed by experience.' [Citation.]" *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 12 (1994). Findings and conclusions of the Illinois Commerce

Commission on questions of fact are held to be *prima facie* true and will not be disturbed on appeal unless they are against the manifest weight of the evidence. 220 ILCS 5/10—201(d) (West 1998); *Illinois Power Co. v. Illinois Commerce Comm'n*, 316 Ill. App. 3d 254 (2000). To warrant reversal, the appellant must show that the opposite conclusion is clearly evident. *Lakehead Pipeline Co. v. Illinois Commerce Comm'n*, 296 Ill. App. 3d 942, 957 (1998).

■ We have reviewed the testimony of both King and Scheppmann and conclude that King's testimony, which obviously was accepted by the Commission, was sufficient to support the conclusion that the agreement was unreasonable. King opined that the agreement was unreasonable because it did not provide a refund to Terra Cotta or its homeowners for the cost of the sewer facilities. This arrangement would give Citizens over $1.4 million worth of sewer facilities without any investment or risk of capital by Citizens. King concluded that the arrangement would increase the likelihood of poor service and would contravene the purpose of the Public Utilities Act and the Commission's regulations—to eliminate competition while preventing the utilities from amassing significant assets with little or no investment. Thus, there was ample testimony to support the Commission's findings. We recognize that Scheppmann opined that the sewer facility arrangement at issue is reasonable and that such an arrangement would result in lower rates for Terra Cotta customers than if Citizens had to invest in sewer facilities itself. However, this opinion is not sufficient to rebut the presumption that the Commission's findings are *prima facie* true. Thus, we cannot say that the Commission's findings are against the manifest weight of the evidence.

The decision of the Illinois Commerce Commission is affirmed.

Affirmed.

BOWMAN and GROMETER, JJ., concur.