# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Apple Canyon Lake Property Owners' Ass'n v. Illinois Commerce Comm'n,**
**2013 IL App (3d) 100832**

---

| | |
|---|---|
| Appellate Court Caption | APPLE CANYON LAKE PROPERTY OWNERS' ASSOCIATION and LAKE WILDWOOD ASSOCIATION, INC., Petitioners/Cross-Respondents, v. ILLINOIS COMMERCE COMMISSION and THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, Respondents (Apple Canyon Utility Company and Lake Wildwood Utilities Corporation, Respondents and Cross-Petitioners).–THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, Petitioner, v. ILLINOIS COMMERCE COMMISSION, APPLE CANYON UTILITY COMPANY, LAKE WILDWOOD UTILITIES CORPORATION, APPLE CANYON LAKE PROPERTY OWNERS' ASSOCIATION and LAKE WILDWOOD ASSOCIATION, INC., Respondents. |
| District & No. | Third District<br>Docket Nos. 3-10-0832, 3-10-0898 cons. |
| Filed | March 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When entering an order increasing the rates charged by two water utilities, the Illinois Commerce Commission erred in striking references to comments made by members of the homeowners associations representing the ratepayers at public forums and on the Commission's website; therefore, the cause was remanded to the Commission with directions to allow citation and consideration of the public comments and inclusion of them in the administrative record and the record on appeal. |
| Decision Under Review | Petitions for review of order of Illinois Commerce Commission, Nos. 09-0548, 09-0549. |

| | |
|---|---|
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Richard C. Balough (argued) and Cheryl Dancey Balough, both of Balough Law Offices, LLC, of Chicago, for Apple Canyon Lake Property Owners' Association and Lake Wildwood Association, Inc. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Carl J. Elitz (argued), Assistant Attorney General, of counsel), for People *ex rel*. Lisa Madigan. |
| | W. Michael Seidel (argued) and Scott M. Levin, both of Howard & Howard PLLC, of Chicago, and Scott J. Rubin, of Bloomsburg, Pennsylvania, for Apple Canyon Utility Company and Lake Wildwood Utilities Corporation. |
| | Thomas R. Stanton (argued), General Counsel, of Illinois Commerce Commission, and John P. Kelliher, Special Assistant Attorney General, both of Chicago, for Illinois Commerce Commission. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. |
| | Justices Lytton and Schmidt concurred in the judgment and opinion. |

## OPINION

¶ 1      This is an appeal of an order of the Illinois Commerce Commission (Commission) setting increased water rates to be charged by two water utilities, Apple Canyon Utility Company and Lake Wildwood Utilities Corporation (the Utilities). Appellants Apple Canyon Lake Property Owners' Association and Lake Wildwood Association (the Associations) represent all of the ratepayers served by the Utilities. The Associations maintain that the Commission violated the Public Utilities Act (the Act) (220 ILCS 5/1-101 *et seq.* (West 2008)) and the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2008)) by: (1) refusing to consider comments posted by ratepayers on the Commission's website and statements made by ratepayers at public forums regarding this water rate case; and (2) striking all references to these comments from the brief that the Associations filed with the Commission. The People have intervened to support the Associations' arguments on these issues.

¶ 2 The Associations also contend that the Commission erred by allowing the Utilities to include in the new water rate base the allocated costs of new billing and accounting systems recently implemented by the Utilities' parent company. Specifically, the Associations argue that the Commission violated the Act by failing to require the Utilities to prove that these new costs were just, reasonable, and of direct benefit to the ratepayers.

¶ 3 The Associations ask us to reverse the Commission's order and direct the Commission to: (1) consider the public comments posted on the Commission's website and those made at the public forum in making its final decision regarding any new water rates;[1] and (2) require the Utilities to prove that the proposed allocated costs of the new billing and accounting systems are just, reasonable, and of direct benefit to the ratepayers affected by the Commission's order.

¶ 4 The Utilities have filed a cross-appeal challenging two aspects of the Commission's order. First, the Utilities argue that the Commission erred by allowing the Utilities to recover certain operation and management (O&M) and general expenses based upon a five-year historical average of those expenses rather than the actual expenses incurred in 2008, which was the "test year" chosen by the Utilities. Second, the Utilities maintain that the Commission erred by denying their application for rehearing which allegedly set forth "new evidence" regarding the Utilities' recoverable rate case expenses (*i.e.*, the expenses that the Utilities incurred in prosecuting this rate case before the Commission and on appeal to this court).

¶ 5 The Commission filed a motion to strike those portions of the Associations' brief on appeal which cite or refer to the public comments made by ratepayers on the Commission's website and during the two public forums held by the Commission. The Commission also moved to strike the web comments and the transcripts of the public forums from the separate appendix filed by the Associations. The Commission argues that these materials were not part of the appellate record certified by the Commission and that this court may not take judicial notice of them. The Associations and the People filed separate responses to the Commission's motion. We took the Commission's motion with the case.

¶ 6 BACKGROUND

¶ 7 Apple Canyon Utility Company provides water usage service to approximately 890 customers and water availability service to approximately 1,800 customers in Jo Daviess County. Lake Wildwood Utilities Corporation provides water usage service to approximately 460 customers and water availability service to approximately 950 customers in Marshall County. Both companies are wholly owned subsidiaries of Utilities, Inc., which owns water utilities in Illinois and 15 other states.

¶ 8 On October 4, 2009, the Utilities separately filed amended tariff sheets instituting a general increase in rates for water service. Both companies proposed increasing rates for a typical customer by 275%. On November 12, 2009, the Commission suspended the amended

[1]Similarly, the People ask us to reverse and order the Commission "to give due consideration to the substance of the public comments received by the Commission at its public forums and from its website, and to make those comments part of its administrative record."

tariff sheets from going into effect and initiated a proceeding to investigate the propriety of the proposed rate increases. The Associations were allowed to intervene. Commission staff also participated.

¶ 9    Pursuant to section 8-306(n) of the Act (220 ILCS 5/8-306(n) (West 2008)), the Associations requested that public forums be held to solicit comments on the proposed rate increases from members of the public. The Commission conducted public forums on February 24, 2010, for the Lake Wildwood Association and on March 2, 2010, for the Apple Canyon Lake Property Owners' Association. Transcripts of the two public forums were filed on the Commission's electronic docket.

¶ 10    In addition, pursuant to section 2-107 of the Act (220 ILCS 5/2-107 (West 2008)), several ratepayers posted comments on the Commission's website. Specifically, 72 of the Companies' 1,370 active customers (or 5.3%) posted comments on the website. In their posted comments, the ratepayers expressed concerns about the magnitude of the proposed rate increases and the effect that the proposed rate increases would have on their already strained budgets. Some ratepayers also discussed various problems with water bills and customer service that they had allegedly experienced since the Utilities' parent company implemented new billing and accounting systems.

¶ 11    The cases were consolidated, discovery was conducted, and written testimony was filed.[2] On May 18, 2010, an evidentiary hearing was conducted before an administrative law judge (ALJ). During the hearing, the parties presented documentary evidence and witness testimony, including expert testimony. The managers of the Associations and at least one ratepayer, a resident of the Lake Wildwood Association, testified on behalf of the Associations. Among other issues, the parties presented evidence regarding the cost, effectiveness, and necessity of the new accounting and billing systems recently implemented by the Utilities' parent company and whether those systems provided benefits to ratepayers.

¶ 12    After the hearing, the parties filed written briefs with the Commission. In their "Joint Initial Hearings Brief," the Associations referred to some of the public comments made on the Commission's website and during the public forums, citing to the website entries and the public forum transcripts found on the Commission's electronic docket. The Commission staff moved to strike these references from the Associations' brief. The Commission staff argued that public comments made on the Commission's website or during public forums were not part of the Commission's record for decision and, therefore, could not be cited by the parties. The ALJ issued an order granting the staff's motion to strike.

¶ 13    The Association timely filed a petition for interlocutory appeal of the ALJ's order with the Commission. The People of the State of Illinois intervened for the limited purpose of addressing the petition for interlocutory review. The People asked the Commission to reverse the ALJ's order and rule that: (1) both the ALJ and the Commission are obligated under the law to consider the public comments made on the Commission's website and during public forums; and (2) the parties are entitled to cite and quote such public comments in briefs and

---

[2]The managers of each of the Associations filed written testimony, as did one resident of the Lake Wildwood Association. The Associations also filed expert testimony.

other documents filed with the Commission. The Commission denied the Associations' petition for interlocutory review, ruling that it was required to make decisions based on the "evidentiary record," which did not include unsworn comments made by members of the general public.

¶ 14    The ALJ subsequently issued a written proposed order on the merits of the rate case. The parties and the Commission staff each filed replies and exceptions to the ALJ's proposed order. The Commission held oral argument and issued its final order on September 9, 2010. The Commission's order included in the new rate base the allocated costs of new billing and accounting systems recently implemented by the Utilities' parent company. It also allowed the Utilities to recover certain O&M and general expenses based upon a five-year average of those expenses from 2004 to 2008. The order's sole reference to the public comments was a statement that "[t]he Commission conducted public hearings on February 24, 2010 for Lake Wildwood and on March 2, 2010 for Apple Canyon."

¶ 15    The Associations, the People, and the Utilities each subsequently filed applications for rehearing. The Utilities argued, *inter alia*, that "new information" which was not available at the time of the hearings showed that the Utilities' rate case expenses (*i.e.*, the Utilities' cost of litigating the rate case before the Commission and on appeal), were higher than previously anticipated by the parties. The Commission denied all of the parties' applications for rehearing.

¶ 16    The Associations and the People appealed the Commission's order striking references to the public forum and website comments from the Associations' brief. The Associations also appealed the Commission's order permitting the Utilities to recover the allocated costs of the new billing and accounting systems. The Utilities cross-appealed the Commission's ruling on O&M expenses and the Commission's denial of the Utilities' application for rehearing regarding its rate case expenses. The appeals were consolidated.

¶ 17    After the Associations filed their opening brief on appeal, the Commission filed a motion to strike from the Associations' brief all citations or references to the public comments made on the Commission's website and during the public forums, and to strike from the Associations' separate appendix the transcripts of the website comments and the public forums. The Commission argued that these materials were not part of the appellate record certified by the Commission and that this court may not take judicial notice of them. The Associations and the People filed separate responses to the motion. On August 2, 2011, this court ruled that the Commission's motion would be taken with the case.

¶ 18                                           ANALYSIS

¶ 19    The Act prescribes the standard and scope of appellate review of Commission orders. An appellate court "shall reverse a Commission rule, regulation, order or decision, in whole or in part," if it finds that: (1) the findings of the Commission are not supported by substantial evidence based on the entire record of evidence presented to the Commission for and against such order or decision; (2) the Commission lacked jurisdiction to enter the order or decision; (3) the order or decision is "in violation of the State or federal constitution or laws"; or (4) the proceedings or manner by which the Commission considered and decided its order or

decision were in violation of the state or federal constitution or laws, to the prejudice of the appellant. 220 ILCS 5/10-201(e)(iv) (West 2008); see also *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199, 207 (2010).

¶ 20　　　The standard of review is deferential. Orders or decisions of the Commission are deemed "prima facie reasonable," and the Commission's findings of fact are deemed *prima facie* true. 220 ILCS 5/10-201(d) (West 2008). The party appealing an order or decision of the Commission bears the burden of proof upon all issues raised by the appeal. 220 ILCS 5/10-201(d) (West 2008); see also *Pliura Intervenors*, 405 Ill. App. 3d at 207. Thus, the Commission's findings and conclusions on questions of fact will not be disturbed unless they are against the manifest weight of the evidence. *Pliura Intervenors*, 405 Ill. App. 3d at 207; *Illinois-American Water Co. v. Illinois Commerce Comm'n*, 331 Ill. App. 3d 1030, 1036-37 (2002). To obtain reversal of such factual findings, "the appellant must show that the opposite conclusion is clearly evident." (Internal quotation marks omitted.) *Pliura Intervenors*, 405 Ill. App. 3d at 207.

¶ 21　　　Moreover, despite the general proposition that issues of law are reviewed *de novo*, "courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute." *People v. Marshall*, 242 Ill. 2d 285, 295 (2011); *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). Reviewing courts defer to an agency's interpretation of such statutes because an agency's interpretation "expresses an informed opinion on legislative intent, based upon expertise and experience." *Marshall*, 242 Ill. 2d at 295. However, courts will not defer to an agency's construction of a statute when the statute is clear and unambiguous because "an interpretation placed upon a statute by an administrative official cannot alter its plain language." *Burlington Northern, Inc. v. Department of Revenue*, 32 Ill. App. 3d 166, 174 (1975); see also *Gray Panthers v. Department of Insurance*, 110 Ill. App. 3d 971 (1982). Nor will a reviewing court defer to an administrative agency's interpretation of a statute if the agency's interpretation is unreasonable. *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2011 IL App (4th) 110210, ¶ 14.

¶ 22　　　Bearing these principles in mind, we turn to the issues raised by the parties.

¶ 23　　　　　　　　　　　A. The Associations' Appeal

¶ 24　　　　　　　1. The Commission's Decision to Strike the Public Comments

¶ 25　　　The Associations and the People argue that recent amendments to the Act require the Commission to consider public comments made during public forums and public comments posted on the Commission's website in deciding contested ratemaking cases like the case at bar. They also maintain that the Act and the Administrative Procedure Act unambiguously establish that these public comments are part of the Commission's record for decision. Accordingly, they contend that the Commission erred in failing to consider the public comments and in striking references to the content of those comments from the Associations' brief.

¶ 26　　　To decide whether the Commission's decision to strike references to the public

comments from the Associations' briefs was reversible error, we must first determine whether the website and public forum comments were part of the Commission's record for decision. If the public comments were outside the Commission's record, then it was improper for the Associations to cite the comments in their briefs, and we must affirm the Commission. However, if we find that the public comments were part of the record, we must then determine whether it was error for the Commission to strike the comments from the parties' briefs. We must also determine whether the Commission gave the public comments proper consideration during the proceeding and, if not, whether its failure to consider the comments was error. If we find that the Commission erred in either respect, we will reverse if the Associations were prejudiced by the error. We address these issues in turn.

¶ 27        a. Whether the Public Comments Were Part of the Commission's Record

¶ 28        In 2006, the legislature amended the Act by adding certain special provisions relating to water and sewer utilities. 220 ILCS 5/8-306 (West 2006). One of those new provisions provides that:

> "When any public utility providing water or sewer service proposes a general rate increase, in addition to other notice requirements, the water or sewer public utility must notify its customers of their right to request a public forum. A customer or group of customers must make written request to the Commission for a public forum and must also provide written notification of the request to the customer's municipal or, for unincorporated areas, township government. The Commission, at its discretion, may schedule the public forum. *** The day of each public forum shall be selected so as to encourage the greatest public participation. *** *Reports and comments made during or as a result of each public forum must be made available to the hearing officials and reviewed when drafting a recommended or tentative decision, finding or order pursuant to Section 10-111 of this Act.*" (Emphasis added.) 220 ILCS 5/8-306(n) (West 2008).

¶ 29        In 2007, the legislature amended the Act again by requiring the Commission to "provide a web site and a toll-free telephone number to accept comments from Illinois residents regarding any matter under the auspices of the Commission or before the Commission." 220 ILCS 5/2-107 (West 2008). The 2007 amendment further provided that "[t]he Commission staff *shall report*, in a manner established by the Commission that is consistent with the Commission's rules regarding ex parte communications, to the full Commission comments and suggestions received through [the website and toll-free telephone number] *before all relevant votes of the Commission*." (Emphases added.) *Id.*

¶ 30        Section 10-103 of the Act provides that the record for decision in a Commission case shall include only the transcript of testimony and exhibits together with "all papers and requests filed in the proceeding," including, in contested cases, "the documents and information described in Section 10-35 of the Illinois Administrative Procedure Act." 220 ILCS 5/10-103 (West 2008). Section 10-35 of the Administrative Procedure Act provides, in relevant part, that the record in a contested case "shall include" eight separate categories of materials, including (among other things) all of the evidence received, the pleadings, "[a]ny decision, opinion, or report by the [ALJ]," and all "*staff memoranda*" or "*data*

*submitted to the administrative law judge or members of the agency in connection with their consideration of the case* that are inconsistent with Section 10-60." (Emphases added.) 5 ILCS 100/10-35(a) (West 2008).[3]

¶ 31     When read together, these statutory provisions unambiguously provide that the public forum and website comments at issue were part of the Commission's record for decision in this case. Because this is a contested case, the Commission's record for decision includes all information described in section 10-35 of the Administrative Procedure Act (220 ILCS 5/10-103 (West 2008)), including any "staff memoranda or data submitted to the administrative law judge or members of the agency in connection with their consideration of the case." 5 ILCS 100/10-35(a)(7) (West 2008). Under the recent amendments to the Act, the Commission staff must report any comments and suggestions received through the Commission's website before the Commission votes on the case. 220 ILCS 5/2-107 (West 2008). Similarly, public comments made during a public forum must be made available to the ALJ and reviewed by the ALJ when drafting a tentative decision. 220 ILCS 5/8-306(n) (West 2008). Thus, both types of public comments constitute either "staff memoranda" or "data" that is "submitted to the administrative law judge or members of the agency in connection with their consideration of the case." 5 ILCS 100/10-35(a)(7) (West 2008). For this reason alone, the website and public forum comments were part of the Commission's record for decision.

¶ 32     The Commission argues that the Associations and the People forfeited the argument that the public forum and website comments were part of the Commission's record for decision under section 10-35(7) of the Administrative Procedure Act because they failed to raise this argument in their applications for rehearing and raised it for the first time on appeal. Contrary to the Commission's assertion, however, both the Associations and the People raised this argument in their applications for rehearing.

¶ 33     On the merits, the Commission argues that the public forum and website comments are not "staff memoranda" or "staff data" under section 10-35(a)(7) of the Administrative Procedure Act because: (1) they are comments made by the public, not the Commission's staff; and (2) the public forum comments are transcribed by a certified public accountant employed by Sullivan's reporting company–not the Commission staff–before they are posted on the electronic docket. However, the Commission does not and cannot deny that the Commission staff is responsible for reporting the website comments to the Commission. See 220 ILCS 5/2-107 (West 2008). Moreover, the fact that the Commission staff is required to report these comments before the Commission votes on the case establishes that the comments are submitted to the Commission "in connection with [its] consideration of the

_____

[3]Section 10-60 of the Administrative Procedure Act addresses *ex parte* communications. 5 ILCS 100/10-60 (West 2008). Thus, section 10-35 of the Administrative Procedure Act provides that the Commission's record shall include all staff memoranda or data submitted to the administrative law judge or members of the agency in connection with their consideration of the case that are not *ex parte* communications.

case." 5 ILCS 100/10-35(a)(7) (West 2008).[4]

¶ 34       In any event, contrary to the Commission's suggestion, section 10-35(a)(7) refers to "staff memoranda or *data*," not "staff memoranda or *staff data*." (Emphases added.) 5 ILCS 100/10-35(a)(7) (West 2008). Thus, by its plain terms, section 10-35(a)(7) includes any "data" submitted to the ALJ and/or the Commission in connection with their consideration of the case, regardless of whether the data was authored or submitted by the Commission staff. Because the public forum and website comments at issue here were submitted to the ALJ or the Commission "in connection with their consideration of the case," the public comments clearly fall within the ambit of section 10-35(a)(7). *Id.*

¶ 35       The Commission and the Utilities also argue that the legislative history of section 8-806(n) of the Act shows that the legislature intentionally decided that the public forum comments should not be included in the Commission's record for decision. However, because we find that the plain language of the relevant sections of the Act and the Administrative Procedure Act unambiguously require these comments to be included in the record, it is neither necessary nor appropriate for us to consider any legislative history. *People v. Fitzpatrick*, 158 Ill. 2d 360, 364-65 (1994) (ruling that "[w]here the statutory language is clear and unambiguous, it will be given effect without resorting to other aids for construction," and the reviewing court "need not refer to the legislative history"); *In re Marriage of Mathis*, 2011 IL App (4th) 110301, ¶ 9 ("a court may examine legislative history only when the legislature's intent is not clear from the statute's plain language"). Regardless, even if we were to consider the legislative history of section 8-806(n), it would not change the result because the legislative history is susceptible to multiple interpretations and does not clearly demonstrate that the legislature intended to exclude public forum comments from the record.

¶ 36       In sum, we hold that, when sections 8-306(n), 2-107, and 10-103 of the Act are read in conjunction with section 10-35(a)(7) of the Administrative Procedure Act, these statutes unambiguously provide that the website and public forum comments are part of the Commission's record for decision. Because this interpretation is compelled by the plain language of the statutory provisions themselves, the Commission's contrary interpretation is not entitled to deference. See, *e.g.*, *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97 (1992) ("a court of review is not bound by an administrative agency's interpretation of a statute"); *Burzic v. Illinois Workers' Compensation Comm'n*, 391 Ill. App. 3d 202, 208 (2009) (ruling that "[i]f the language of the statute is clear and unambiguous, the court must interpret the statute according to its terms" regardless of the interpretation provided by the agency); *Burlington Northern, Inc.*, 32 Ill. App. 3d at 174 ("an interpretation placed upon a statute by an administrative official cannot alter its plain language"); see also *Gray Panthers*, 110 Ill. App. 3d at 973.[5]

---

[4]This is true regardless of whether the Commission is required to consider the website comments before voting on the case and regardless of whether it actually considers them.

[5]The People argue that the website and public forum comments are part of the Commission's record for a second, independent reason. Specifically, the People argue that the website and public

¶ 37          b. Whether the Commission Erred in Striking the Public Comments

¶ 38      Although we have determined that the website and public forum comments were part of the Commission's record for decision in this case, this does not end our inquiry. We must also determine whether the Commission's decision to strike the comments from the Associations' brief was improper.

¶ 39      The Commission and the Utilities argue that, regardless of whether the website and public forum comments are part of the Commission's record for decision, the Commission properly struck them from the Associations' brief because they are not *evidence*. The Administrative Procedure Act provides that "[f]indings of fact shall be based *exclusively on the evidence* and on matters officially noticed." (Emphasis added.) 5 ILCS 100/10-35(c) (West 2008).[6] The public comments at issue were not introduced as evidence in the hearing. Moreover, the Commission argues that, because the public comments were unsworn statements that were not subject to cross-examination or the other rigors of the fact-finding process, they could not possibly be considered competent evidence capable of assisting the Commission in resolving any disputed factual issues. Thus, the Commission and the Utilities contend that the Commission had the discretion to strike the comments from the parties' briefs in order to preserve the integrity of the fact-finding process. We disagree.

¶ 40      It is true that the Commission must base its factual findings on the evidence and on matters officially noticed (5 ILCS 100/10-35 (West 2008)) and that nothing can be treated as evidence unless it is introduced as evidence and satisfies the threshold evidentiary requirements of admissibility. *Village of Montgomery v. Illinois Commerce Comm'n*, 249 Ill. App. 3d 484, 495 (1993). It is also true that not everything in the Commission's record for decision meets these requirements and qualifies as evidence. For example, although *ex parte* communications must be disclosed by the Commission and included in the record in contested cases (5 ILCS 100/10-35(a)(8) (West 2008)), "[n]o such communication shall form the basis for any finding of fact" (*id.*). Accordingly, the Commission may not rely on such

---

forum comments constitute "requests filed in the proceeding," and are therefore included in the Commission's record pursuant to section 10-103 of the Act. 220 ILCS 5/10-103 (West 2008). However, as the Commission correctly argues, the People have forfeited this argument by failing to raise the argument in their application for rehearing before the Commission. The Act expressly limits the scope of a party's appeal to the reviewing court to those issues raised in the application for rehearing before the Commission. 220 ILCS 5/10-113(a) (West 2008) ("No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission."); *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 134 (1995); *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 100-01 (1987). We therefore decline to address the People's alternative argument.

    [6]The parties do not argue that the Commission took official notice of the content of the public comments in deciding the case, and we have found nothing in the record suggesting that it did so. Nor do the parties address whether the Commission could or should have taken official notice of the comments. Thus, we do not decide that question here.

communications when resolving disputed issues of fact in contested cases, and it may properly strike such communications from the parties' briefs even though they are included in the record for decision. See *Village of Montgomery*, 249 Ill. App. 3d at 495.

¶ 41   However, resolving disputed factual issues is not the only purpose of a contested ratemaking proceeding under the Act. As the People and the Associations correctly note, the Act requires the Commission in a contested case to determine whether the rate increases proposed by a utility are "just and reasonable." 220 ILCS 5/9-201(c) (West 2008). To make this ultimate determination, the Commission must resolve disputed factual issues, but it must also consider certain equitable and policy considerations. For example, the Commission must ensure that consumers are treated fairly (220 ILCS 5/1-102(d) (West 2008)), that "the application of rates is based on public understandability and acceptance of the reasonableness of the rate structure and level" (220 ILCS 5/1-102(d)(ii) (West 2008)), and that "the rates for utility services are affordable and therefore preserve the availability of such services to all citizens" (220 ILCS 5/1-102(d)(viii) (West 2008)). The public website and public forum provisions in sections 2-107 and 8-306 of the Act enable members of the public to inform the Commission whether the proposed new rates and the rate structure are understandable, generally accepted, and considered affordable by the public. They also help to inform and guide the Commission's discretion in its efforts to determine whether the rate increases proposed by the utilities are fair, just, and reasonable. Striking this information from the parties' briefs undermines these statutory objectives. It also improperly prohibits the parties from referring to or commenting upon material that the ALJ is legally required to consider in deciding the case. See 220 ILCS 5/8-306(n) (West 2008).

¶ 42   Moreover, the Commission had no authority under any statute or Commission rule to strike the website and public forum comments from the Associations' brief. The Commission relies upon section 200-190(a) of title 83 of the Illinois Administrative Code, which provides that "[m]otions may be presented requesting *** the striking of irrelevant, immaterial, scurrilous or unethical matter." 83 Ill. Adm. Code 200-190(a) (1996). However, the Commission and the Utilities do not and cannot argue that the public comments at issue were "scurrilous" or "unethical." Nor can they plausibly maintain that the website and public forum comments were "irrelevant" or "immaterial" to this ratemaking proceeding. As noted above, the Act requires the ALJ to review the public forum comments when drafting a proposed decision (220 ILCS 5/8-306(n) (West 2008)) and requires the Commission staff to report the website comments to the Commission before it votes on the matter (220 ILCS 5/2-107 (West 2008)). Thus, although the public comments may not be treated as evidence or relied upon to resolve contested issues of fact, the legislature has ordained that the comments are relevant to ratemaking proceedings. Because the public comments might affect the Commission's decision, and because they are part of the Commission's record, the parties must be given an opportunity to cite to the comments in their briefs and to make permissible arguments about the comments' significance.

¶ 43   That is precisely what the Associations attempted to do here. The Associations' opening brief contained five comments taken verbatim from the Commission's website and seven excerpts accurately quoted from the public forums. In these comments, members of the public characterized the rate increases proposed by the utilities as excessive, unfair, and

unaffordable. The Associations offered these comments to demonstrate that the ratepayers had "voiced concerns" and "expressed opposition to" the proposed rate increases. In other words, the Associations cited the public comments at issue to demonstrate that there was a public outcry against the proposed rate increases. That fact is relevant to the question whether the public understands and accepts the proposed rate increases and whether those increases are just and reasonable. As noted above, the Commission is required by statute to address these issues before approving a proposed rate increase. See 220 ILCS 5/9-201(c), 1-102(d)(ii) (West 2008). Thus, the parties are entitled to cite the public forum and website comments for this purpose in their briefs to the ALJ and the Commission.

¶ 44    Contrary to the Commission's and the Utilities' assertions, the Associations did not seek to use the public comments as evidence in support of a disputed factual issue.[7] Accordingly, although the Commission was free to accord the public comments whatever weight it deemed appropriate, it was not free to disregard them or to strike them from the Associations' briefs. The Commission's decision to strike the public comments from the Associations' brief was arbitrary and capricious and was based on the legally erroneous conclusion that the public comments were not part of the Commission's record for decision because they could not be used as evidence. That decision was therefore both contrary to law and an abuse of discretion. See, *e.g.*, *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App. 3d 542, 572 (2009) (appellate court will reverse a discretionary decision made by the Commission if the Commission exercised its discretionary authority in an arbitrary or capricious manner); *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 369 Ill. App. 3d 128, 135 (2006).

¶ 45    Moreover, the Commission's erroneous decision to strike the public comments from the Associations' briefs and its refusal to consider the comments when deciding the case prejudiced the Associations. By taking these actions, the Commission deprived the ratepayers of their statutory right to have their comments heard and considered by the Commission before the Commission issued its decision. 220 ILCS 5/2-107 (West 2008); see generally 220 ILCS 5/8-306(n) (West 2008). It also ignored public comments that were directly relevant to issues that the Commission was statutorily required to consider, *i.e.*, whether the proposed rates were fair, just, reasonable, and understood and accepted by the public. The public comments that the Associations cited showed a strong public outcry against the proposed rate

---

[7]Most of the public comments cited by the Associations clearly had no bearing on any disputed factual issue. However, two of the public comments cited by the Associations involved public complaints regarding the allocated costs for the new billing systems and claims that the new systems were faulty or inefficient. The Commission could have properly considered these comments (together with the other public comments cited by the Associations) in deciding whether the public understood and accepted the proposed rate increases and whether the proposed rates were just, fair, and reasonable. However, the Commission could not consider these comments in resolving the disputed factual issue of whether the Utilities should be allowed to recover allocated costs for the new billing and accounting systems or the proper amount of any such recoverable costs. Nor could the Commission consider these comments as evidence that the new systems were, in fact, ineffective or inefficient.

increases. The Commission's failure to consider these comments might well have resulted in the Commission's approval of rates that were higher than they would have been had the Commission fulfilled its statutory obligations.

¶ 46 The Commission and the Utilities disagree with this analysis in several respects. First, they argue that the Commission is not statutorily required to "consider" the public forum or website comments under the Act. According to the Commission, sections 8-306(n) of the Act requires the *ALJ* (not the Commission) to "review" the public forum comments before issuing a recommended or tentative decision, and section 2-107 merely requires the Commission staff to "report" the website comments to the Commission before all relevant votes of the Commission. Neither provision expressly requires the *Commission* to "consider" either type of public comments before issuing its decision. The Commission argues that section 2-107 clearly suggests that the Commission has the discretion to decide whether or not to consider the website comments. The Commission contends that, at most, the governing statutes are ambiguous on the matter and that we are therefore required to defer to the Commission's reasonable construction of the statutes.

¶ 47 We disagree. Although "[a] reviewing court will not substitute its interpretation of a statutory provision for a *reasonable* one adopted by the agency charged with the statute's administration" (emphasis added) (*Pliura Intervenors*, 405 Ill. App. 3d at 209), we will not defer to an agency's construction of a statute if it contradicts the plain terms of the statute (*Burlington Northern, Inc.*, 32 Ill. App. 3d at 174) or is "unreasonable" (*Griggsville-Perry Community Unit School District No. 4*, 2011 IL App (4th) 110210, ¶ 14). See also *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 110 (1993) ("[a] statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended"). In enacting the amended sections 8-306(n) and 2-107 of the Act, the legislature clearly intended to expand public participation in contested rate cases by creating two separate avenues for the public to comment on proposed rate increases and by requiring those public comments to be presented to the administrative decision-makers before any proposed or final decisions are rendered. Section 8-306(n) requires the ALJ to review the public forum comments before issuing a proposed decision (220 ILCS 5/8-306(n) (West 2008)), and section 2-107 provides that the Commission staff "*shall* report" the website comments to the Commission *before the Commission votes on the matter*. (Emphasis added.) 220 ILCS 5/2-107 (West 2008). Clearly, the legislature intended for the Commission to consider these public comments before deciding the case. Otherwise, allowing the public to comment during the public forums and on the Commission's website would be an empty gesture that would give the public no meaningful opportunity to be heard. Why would the legislature require the ALJ to consider the public forum comments before issuing a proposed decision, only to leave the Commission free to ignore both types of public comments when reaching its final decision? That result strikes us as absurd and

unreasonable, and we cannot plausibly ascribe that intention to the legislature.[8]

¶ 48     The Commission also argues that, even if it were required to consider the website and public forum comments, the Associations and the People have failed to overcome the presumption that the Commission followed the law and considered these comments. Again, we disagree. The Commission did not include transcripts of the website or public forum comments in the record on appeal. Under the Administrative Procedure Act, the Act, and Supreme Court Rule 335, the Commission is required to include in the record on appeal anything that the Commission considered in making its decision, including everything contained in the Commission's record for decision. 735 ILCS 5/3-108 (West 2008) (providing that the record on appeal should consist of "the entire record of proceedings under review"); Ill. S. Ct. R. 335(d) (eff. Feb. 1, 1994) ("The entire record before the administrative agency shall be the record on review unless the agency and the petitioner stipulate to omit portions."); 220 ILCS 5/10-110 (West 2010) (providing that, unless the parties stipulate otherwise, the record on appeal shall consist of a transcript of the testimony and exhibits presented to the Commission, the "pleadings, records, and proceedings in the case," and "all information secured by the Commission on its own initiative and considered by it in rendering its order or decision (and required by this Act to be made a part of its records)"). The Commission's failure to include the public forum and website comments in the record on appeal shows that the Commission did not consider those comments in rendering its decision. Moreover, as noted above, the Commission erroneously believed that the public comments could not be included in the Commission's record because they were not evidence, and the Commission was well aware that its decision must be based on the record. This further supports the inference that the Commission did not consider the public forum or website comments in reaching its decision. And, although not dispositive, comments made by some of the commissioners during their deliberations on the Associations' petition for interlocutory review of the ALJ's ruling suggest that some of the commissioners were confused about whether they could consider the public forum and website comments in rendering their decision.

¶ 49     In addition, the Commission argues that the Associations were not prejudiced by the Commission's purported failure to consider the public comments because the Associations presented evidence regarding the potential impact of imposing the allocated costs of the new billing and accounting systems on the ratepayers, including sworn testimony by one ratepayer who testified that the proposed rate increases would impose a financial hardship on his family. The Commission maintains that the public forum and website comments would have been cumulative of this testimony. Moreover, the Commission contends that, if the Associations wanted to present testimony from other ratepayers on this issue, it could have

---

[8]Our conclusion is bolstered by the fact that the governing statutes in both the Administrative Procedure Act and the Act unambiguously provide that the public forum and website comments are part of the Commission's record for decision. As noted above, the Commission's conclusion that these public comments are not part of the Commission's record is based on an erroneous construction of the plain, unambiguous terms of the applicable statutes and is, therefore, entitled to no deference.

presented sworn testimony from those ratepayers during the hearing. According to the Commission, the Associations cannot claim that they were prejudiced by their own decision not to present such additional evidence.

¶ 50 The Commission is mistaken. The governing statutes require the Commission to consider the public comments as a whole. Only when all of the public comments are considered can the Commission fairly determine the proper weight to place on the comments and the extent to which the comments show a substantial public outcry against the rates. Because these comments are a part of the Commission's record and there is no legitimate basis to exclude them, the Associations had a right to cite them in their briefs and to comment on their significance. The Commission's refusal to allow the Associations to do this (and its failure to consider the comments *in toto*) might have led the Commission to approve increased rates that were perceived as unfair and unreasonable by the public. The Commission might well have approved more modest rate increases had it properly considered the public comments and the Associations' arguments about their significance.

¶ 51 Further, for reasons similar to those discussed above, we deny the Commission's motion to strike references to the public forum and website comments from the Associations' brief and separate appendix. As noted, the public forum and website comments were part of the Commission's record for decision and the legislature has required the Commission to consider these documents in deciding contested rate cases. Accordingly, the Commission should have included the public comments in the record on appeal. Moreover, the Utilities do not contest the accuracy of the public forum transcripts or the copies of the website comments submitted by the Associations; although they may question the truth of the matters asserted in the public comments, they do not contest that the comments were actually made by members of the public and were properly transcribed and/or copied. Moreover, contrary to the Commission's argument, the public comments are not extra-record "evidence." Although the Commission may consider the public comments in assessing the public's understanding and acceptance of the proposed rate increases, it may not consider them as evidence in support of any contested factual issue. For these reasons, we take judicial notice of the public forum and website comments, deny the Commission's motion to strike portions of the Associations' brief and separate appendix citing or referring to the public comments, and remand the case to the Commission so that the Commission may appropriately consider the public comments in deciding this case.

¶ 52 ## 2. The Commission's Inclusion of Accounting and Billing System Costs in the Rate Base

¶ 53 The Associations argue that the Commission erred when it included the allocated costs of the Utilities' new nationwide billing and accounting systems in the increased rate base. Specifically, the Associations maintain that the Commission erred by: (1) failing to require the Utilities to establish the justness and the reasonableness of the proposed rate increases and improperly shifting the burden of proof on this issue to the Associations; (2) failing to determine whether and how the Utilities' new billing and accounting system benefited the Associations' ratepayers; and (3) failing to properly consider the interests of ratepayers and

the concerns expressed by some of them, and failing to balance the interests of the ratepayers against the interests of the shareholders. We address these arguments in turn.

¶ 54    First, contrary to the Associations' claim, the Commission held the Utilities to its burden and did not improperly shift the burden of proof. Whether the Commission applied the proper legal standard is a question of law that we review *de novo*. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 327 Ill. App. 3d 768, 775 (2002). Under the Act, a utility bears the burden to establish that its proposed rates are just and reasonable. 220 ILCS 5/9-201(c) (West 2008). Once a utility makes a showing of the costs necessary to provide service under its proposed charges, it has established a *prima facie* case, and "[t]he burden then shifts to others to show that the costs incurred by the utility are unreasonable because of inefficiency or bad faith." *Illinois Bell*, 327 Ill. App. 3d at 776; *City of Chicago v. Illinois Commerce Comm'n*, 133 Ill. App. 3d 435, 443 (1985). In this case, the Utilities' witnesses testified that the billing and accounting systems used by the utilities in the past had become obsolete and needed to be replaced. The Utilities engaged in a series of internal and external evaluations and retained a well-known accounting firm which prepared a business case supporting the selection of the new accounting and billing systems at issue. Steven Lubertozzi, a certified public accountant (CPA) who testified on behalf of the Utilities, provided testimony regarding the allocated costs of providing these new accounting and billing systems to the Associations' ratepayers. He also testified as to the benefits of the new systems and described the process by which the systems were selected. Accordingly, the Utilities established a *prima facie* case, and the burden shifted to the Associations to show that the costs of the new systems were unreasonable because of inefficiency or bad faith. *Illinois Bell*, 327 Ill. App. 3d at 776.

¶ 55    The Associations failed to carry that burden. The Utilities' evidence regarding the costs and benefits of the new accounting and billing systems and regarding the Utilities' reasons for selecting those systems was largely unrebutted. The Associations did not impeach the Utilities' evidence, challenge the Utilities' business case supporting the selection of the new systems, or provide testimony or other evidence suggesting the existence of a less expensive or more efficient alternative. In their brief before the Commission, the Associations argued that the allocated cost of the new billing and accounting systems to the Associations' ratepayers was substantially higher than the national average charge to ratepayers for those systems. However, these arguments were not supported by testimony or other evidence properly introduced into the record. Moreover, the Commission staff and the Utilities explained that the Associations' cost calculations were based on errors and material omissions.[9] Thus, the Associations failed to show that the costs of the new systems were

---

[9]For example, the Utilities and the Commission staff maintained that the Associations omitted various items from the revenue requirement calculation, used an incorrect weighted cost of debt, and ignored direct costs associated with operating the computer systems at issue, such as maintenance and personnel costs. Moreover, the Utilities and the Commission staff noted that the cost methodology employed by the Associations was not supported by sworn testimony which could have been tested by cross-examination. Finally, the Utilities noted that, under the terms of an affiliate interest agreement approved by the Commission in a prior docket proceeding, the Utilities were

unreasonable because of inefficiency or bad faith.[10]

¶ 56    The Associations also argue that the Commission erred by accepting the Utilities' cost calculations "without question," "[i]n spite of the lack of evidence demonstrating any direct benefit to ratepayers from the new billing and accounting systems." A public utility has the burden of proving that the costs for which it seeks reimbursement "directly benefit[] the ratepayers or the services which the utility renders." *Candlewick Lake Utilities Co. v. Illinois Commerce Comm'n*, 122 Ill. App. 3d 219, 227 (1983). Contrary to the Associations' argument, however, there was evidence suggesting that the new billing and accounting systems directly benefited both the ratepayers and the water services rendered by the utilities. For example, Lubertozzi testified that the new systems would enable the Utilities to respond to customer concerns more quickly and efficiently, manage projects more cost effectively, and deliver information to regulators more accurately and efficiently. Lubertozzi testified that the new systems were superior in several respects to previous billing and accounting systems, which were obsolete, flawed, and no longer supported by vendors. He also testified that the new systems were used by the Utilities' employees on a daily basis to look up customer accounts, answer billing questions, resolve billing issues, and post payments to customer accounts in real time.

¶ 57    The Commission is presumed to have acted correctly (*Candlewick Lake Utilities Co.*, 122 Ill. App. 3d at 222), and the Commission's findings on factual issues may be overturned only if they are against the manifest weight of the evidence. *Pliura Intervenors*, 405 Ill. App. 3d at 207. To warrant reversal under this standard, the appellant must show that the opposite

---

required to allocate shared costs of their billing and accounting systems among *all* of the Associations' customers, including "availability" (or "stand-by") customers. Nevertheless, the Associations excluded stand-by customers from their allocated cost calculation, a decision that was not supported by any testimony or other evidence. According to the Commission staff, that substantially (and artificially) inflated the Associations' estimation of the per-customer cost.

[10]In arguing that the Commission improperly shifted the burden of proof, the Associations rely upon our supreme court's decision in *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 117 Ill. 2d 120 (1987). However, *Hartigan* is inapposite. *Hartigan* addressed an electric utility's burden to establish the reasonableness of power plant construction costs under section 9-213 of the Act. 220 ILCS 5/9-213 (West 2008) (formerly Ill. Rev. Stat., 1985 Supp., ch. 111 2/3, ¶ 30.1). Section 9-213 requires that the reasonableness of such costs must be determined by an audit conducted by the Commission or by independent persons designated by the Commission. 220 ILCS 5/9-213 (West 2008); *Hartigan*, 117 Ill. 2d at 132-33. In *Hartigan*, the supreme court held that this statutory requirement replaced the traditional presumption that the costs incurred by a utility in constructing a power plant were reasonable. Thus, the supreme court ruled that the Commission erred when it presumed that the costs asserted by the utility were reasonable and required the intervenors to establish otherwise. However, *Hartigan* applies only to power plant construction costs, which are governed by section 9-213. Costs incurred by utilities for other purposes, such as the costs at issue in this case, are subject to the traditional burden-shifting analysis discussed above. See, *e.g.*, *Illinois Bell*, 327 Ill. App. 3d at 776. As noted above, the Commission properly applied that analysis in this case.

-17-

conclusion is "clearly evident." *Illinois-American Water Co.*, 331 Ill. App. 3d at 1037. The credibility of witnesses and the weight to be given their testimony are matters for the Commission as the trier of fact. *Illinois Bell*, 327 Ill. App. 3d at 777; *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n*, 174 Ill. App. 3d 1049, 1060 (1988).

¶ 58    In this case, the Utilities presented evidence that, after meeting with a consulting firm, the Utilities' parent company decided to replace the outdated systems with the new systems at issue in this case. No Association witness impeached the Utilities' evidence on this issue or provided cost data of a less expensive or more reasonable alternative. The Associations presented evidence suggesting that some ratepayers were having problems with the new systems and that some of the features of the new systems did not actually benefit the ratepayers at issue in this case. However, these facts do not negate the fact that the Utilities presented competent, unrebutted evidence that replacement systems were needed and that the new systems benefited both the Associations' ratepayers and the services that the Utilities provide in at least some respects. Accordingly, we cannot say that the Commission's decision to include the allocated costs of the new billing and accounting systems in the rate base was against the manifest weight of the evidence.

¶ 59    Finally, the Associations argue that, in deciding to include the costs of the new billing and accounting systems in the rates, the Commission failed to balance the interests of the ratepayers against the interests of the shareholders, as required by the Act. See 220 ILCS 5/1-102 (West 2008). The Associations did not raise this argument in their application for rehearing before the Commission. The Act expressly limits the scope of a party's appeal to the reviewing court to those issues raised in the petition for rehearing before the Commission. 220 ILCS 5/10-113(a) (West 2008) ("No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission."); *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 134 (1995); *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 100-01 (1987). Accordingly, the Associations have forfeited the argument.[11]

¶ 60    However, even if we were to consider the Associations' argument on this issue, we would reject it. The Associations note, correctly, that "[t]he Commission cannot fulfil its statutory duty to balance the competing interests of stockholders and ratepayers without taking into account the interests of ratepayers by considering the impact of proposed rates on ratepayers." *Citizens Utility Board v. Illinois Commerce Comm'n*, 276 Ill. App. 3d 730, 737 (1995). However, the Associations have failed to overcome the presumption that the

---

[11]The Associations argue that they raised the argument that the Commission failed to consider and balance the ratepayers' interests merely by asserting in their application for rehearing that: (1) the Commission must consider benefits to the ratepayers before imposing costs; and (2) the Utilities failed to prove that the new billing and accounting systems benefited ratepayers. We disagree. Neither of these general statements raised the argument that the Associations now raise on appeal. As our supreme court has noted, section 10-113(a) "specifically requires express mention of grounds for review in the petition for rehearing." *Citizens Utility Board*, 166 Ill. 2d at 136. Because the Associations failed to expressly raise the argument as a ground for review in their application for rehearing, it is forfeited.

Commission followed the law and considered the effect of the proposed rate increases on the ratepayers. Scott Rubin, the Associations' expert witness, and the general managers of the two Associations each testified regarding the impact of the proposed rate increases on ratepayers and on the Associations. Paula Lange, the general manager of the Lake Wildwood Association, and Rubin also testified regarding alleged flaws in the Utilities' billing systems, including various billing errors and delays. Moreover, Randy Hart, an Association member, testified about the hardship a large rate increase would impose on his family. The Associations offer nothing (aside from a bald assertion) suggesting that the Commission failed to consider this evidence.[12] The careful analysis employed by the Commission in its written order suggests just the opposite. After reviewing the record evidence (including the recommendations of its staff), the Commission approved rate increases that were 50% to 60% lower than the increases to the revenue requirements initially proposed by the Utilities. Thus, the Associations failed to overcome the presumption that the Commission's order was lawful and that its factual findings were correct.

¶ 61    The Associations also argue that the Commission erred by failing to consider the complaints that various ratepayers expressed about the new billing and accounting system on the Commission's website and during the public forums. However, as noted above, it would have been inappropriate for the Commission to consider these public comments in determining whether the new accounting and billing systems were faulty, inefficient, or otherwise of little benefit to the ratepayers. The Commission must resolve disputed factual issues like these based entirely upon the sworn testimony and other properly-admitted evidence. As noted above, the unsworn public forum and website comments are not evidence and may not be considered as such.

¶ 62                        B. The Utilities' Cross-Appeal

¶ 63                        1. Operation and Management Costs

¶ 64    In their cross-appeal, the Utilities argue that the Commission erred by allowing the Utilities to recover certain operation and management (O&M) and general expenses based upon a five-year average of those expenses rather than the actual expenses incurred in 2008, which was the "test year" chosen by the Utilities. The Utilities argue that the Commission's decision violated the "test year" ratemaking principle and was not supported by substantial evidence. We disagree.

¶ 65    In establishing the rates that a public utility is permitted to charge its customers, the Commission must first determine the utility's revenue requirement. The components of the revenue requirement have frequently been expressed in the formula "R (revenue requirement) = C (operating costs) + Ir (invested capital or rate base time rate of return on capital)."

---

[12]That fact distinguishes this case from *Citizens Utility Board*, 276 Ill. App. 3d at 738, a case relied upon by the Associations. In *Citizens Utility Board*, the Commission heard no evidence regarding the effect that a proposed restructuring of rates would have on consumers, and the Commission "effectively conceded" that it did not consider consumer interests or the effect on consumers.

(Internal quotation marks omitted.) *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 146 Ill. 2d 175, 195-96 (1991) (*BPI II*); *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2011 IL App (1st) 101776, ¶ 12. In order to accurately determine a utility's revenue requirement, the Commission has established filing requirements under which a utility must present its rate data in accordance with a proposed one-year test year. *People ex rel. Madigan*, 2011 IL App (1st) 101776, ¶ 19. The purpose of the test year rule is to prevent a utility from overstating its revenue requirement by mismatching low revenue data from one year with high expense data from a different year. *BPI II*, 146 Ill. 2d at 237-38; see also *A. Finkl & Sons Co. v. Illinois Commerce Comm'n*, 250 Ill. App. 3d 317, 330 (1993) (test year rule prevents a utility from "us[ing] a low revenue figure from one year and a high expense figure from another year to justify a rate increase"). The test year can be set as either a future or historical year. 83 Ill. Adm. Code 287.20 (2003).

¶ 66 In this case, the Utilities asked the Commission to measure its future O&M expenses[13] based upon the expenses they actually incurred in 2008. However, the Commission staff maintained that the Utilities incurred atypical, abnormally large O&M expenses in the 2008 test year due to temporary capital improvement projects that would not continue in future years. Accordingly, the Commission staff recommended that the test year O&M expenses should be adjusted (or "normalized") to reflect a more representative level of the Utilities' actual expenses going forward. To accomplish this, the Commission staff recommended that the Utilities' future O&M expenses should be estimated based upon the historical average of those expenses over the five-year period from 2004 through 2008. The Commission agreed with the staff's recommendation.

¶ 67 On appeal from an order of the Commission, the appellant bears the burden of proving that the order was not supported by "substantial evidence" (220 ILCS 5/10-201(d), (e)(iv) (West 2008)). The appellant does not carry this burden merely by showing that the evidence may support a different conclusion. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 479 (1994) (ruling that "substantial evidence" may support more than one possible finding, and possibly even several). To prevail, the appellant must show that the opposite conclusion is "clearly evident." *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d 161, 171 (1994). We will not disturb the Commission's finding if "a reasoning mind would accept the evidence as sufficient to support" the Commission's conclusion. *Central Illinois Public Service Co.*, 268 Ill. App. 3d at 479. Thus, on review, the question is whether there is sufficient evidence supporting the Commission finding, not whether we would have reached the same conclusion as the Commission based on the evidence.

¶ 68 Applying these deferential standards, we hold that the Commission's decision was supported by substantial evidence. In its response to a data request propounded by the Commission staff, the Utilities conceded that their parent company had added staff during

---

[13]The rate increases at issue in this case would be in effect from 2011 through 2014. Thus, the Commission had to estimate what the Utilities' recoverable O&M expenses would be during those future years.

a large capital improvement project beginning in 2006 and that, "[s]ince that time, [the Utilities' parent company] ha[d] begun to downsize its staff and consolidate positions due to the lack of necessity in direct relation to the amount of capital improvements that are planned for future years." After reviewing the information supplied by the Utilities, Commission staff witness Burma Jones, a licensed CPA, opined that: (1) the magnitude of the increases in the Utilities' test year O&M expenses over the previous years' expenses was unreasonable; (2) the Utilities had failed to show that the test year expenses were representative of the actual O&M expenses that the Utilities will incur during the five-year period in which the new rates will be in effect; and (3) the Utilities' alleged test year O&M expenses would not be sustained going forward as the Utilities continued to downsize and consolidate its staff. Jones therefore proposed an adjustment to the test year O&M expenses based upon the five-year average of such expenses reported by each Utility to the Commission for the years 2004 through 2008. Jones opined that using this five-year average would represent a more just, reasonable, and representative level of O&M expenses during the years in which the new rates would be in effect. She also opined that the five-year average she proposed would be more representative of the Utilities' future O&M costs than would the three-year average proposed by the Utilities, because the three years chosen by the Utilities (2007 through 2009) involved abnormally high O&M costs related to temporary capital projects. This evidence is sufficient to support the Commission's decision.

¶ 69    The Utilities take issue with the Commission's order in several respects. For example, they argue that the five-year average proposed by Jones and adopted by the Commission will not be representative of their O&M costs going forward because it includes expense data from as far back as 2004, seven years before the new rates were to take effect. Moreover, the Utilities argue that the five-year average does not take into account the effects of inflation and rising costs in health care, electricity, gas, and other costs. Further, the Utilities maintain that the three-year average proposed by their expert would reflect their future O&M costs more accurately than would the Commission's five-year average, which was based on outdated cost data.

¶ 70    The credibility of expert witnesses and the weight to be given their testimony are matters for the Commission as the finder of fact. *Lefton Iron & Metal Co.*, 174 Ill. App. 3d at 1060. Thus, the Commission was entitled to credit Jones's opinions over Lubertozzi's. Moreover, although the five-year average adopted by the Commission included O&M expense data from 2004, it also included expense data from 2008, a year in which the Utilities' O&M expenses were abnormally high. This decreased the likelihood that the average chosen by the Commission would understate the Commission's actual future expenses. In addition, the Utilities' 2009 expense data showed that the Utilities' O&M expenses were decreasing, even if not at the rate predicted by Jones. Accordingly, there was ample evidence to support the Commission's conclusion. At most, the objections raised by the Utilities show that the evidence could have reasonably supported another possible conclusion. In our view, the Utilities have not shown that a conclusion opposite to the one drawn by the Commission was "clearly evident."

¶ 71    We also hold that the Commission's decision did not violate test year principles. The Utilities submitted test year data, and the Commission utilized that test year data in

-21-

determining the Utilities' revenue requirement. However, after finding that the evidence showed that the Utilities' test year O&M expenses were atypical (*i.e.*, abnormally high), the Commission adjusted the recoverable O&M expenses downward for the five-year period in which the new rates would be in effect. The Commission did this to ensure that the new rates would more accurately reflect the Utilities' actual O&M costs going forward. It is important to note that the Commission was setting rates for a five-year period, not for a single year. If the Commission had set the new five-year rates based on the atypical test year O&M expenses submitted by the Utilities, the rates would not represent the Utilities' actual costs, resulting in an unfair and an unwarranted windfall for the Utilities. This is precisely the result that the test year rule was designed to prevent.

¶ 72     The Commission's order did not permit the Utilities to mismatch low revenue data from one year with high expense data from a different year in order to justify an improper rate increase. See *BPI II*, 146 Ill. 2d at 237-38. Nor did it allow the Utilities to recover additional future expenses not incurred during the test year, thereby authorizing a recovery amount that exceeded the test year expense level. See *A. Finkl & Sons Co.*, 250 Ill. App. 3d at 330-31. Instead, the Commission merely sought to "normalize" the test year figure based on a historical average of the Utilities' O&M expenses to prevent the Utilities from recovering a nonrepresentative level of O&M expenses. Under the circumstances of this case, we find that the Commission's order did not violate test year principles.[14]

¶ 73                    2. The Commission's Denial of the Utilities' Request for Rehearing

¶ 74     The Utilities also argue that the Commission erred by denying their verified application for rehearing, which, the Utilities claim, set forth new evidence regarding the Utilities' rate case expenses[15] that was not available at the time the Commission conducted a hearing on this issue. The Utilities maintain that the Commission was required to grant its request for rehearing under section 10-201(e) of the Act, which provides:

"If it appears that the Commission failed to receive evidence properly proffered, on a hearing or a rehearing, or an application therefor, the court shall remand the case, in

---

[14]The Utilities also argue that the Commission's estimation of O&M costs based on a five-year historical average was improper because section 287.40 of title 83 permits adjustments to the test year data only for "known and measurable changes" to the test year, *i.e.*, only for changes that are "reasonable certain to occur" subsequent to the test year and only where the amounts of such changes are "determinable." 83 Ill. Adm. Code 287.40 (2003). However, that regulation governs "pro forma adjustments" which may be requested by a *utility*. It does not address or limit the *Commission's* authority to adjust abnormally high test year expenses to ensure that prospective rates reflect the actual costs that the utility will incur while the new rate is in effect.

[15]Rate case expenses are the costs a utility incurs in preparing and presenting a rate case at the Commission and on appeal, which may include outside legal fees, consulting fees, incremental personnel expenses, and travel and lodging expenses. See 83 Ill. Adm. Code 285.3085(a) (2003). Reasonable rate case expenses are operating expenses that a utility may recover in its proposed rates. *Id.*; see also *Candlewick Lake Utilities Co.*, 122 Ill. App. 3d at 226.

whole or in part, to the Commission with instructions to receive the testimony so proffered and rejected, and to enter a new order based upon the evidence theretofore taken, and such new evidence as it is directed to receive, unless it shall appear that such new evidence would not be controlling, in which case the court shall so find in its order." 220 ILCS 5/10-201(e)(ii) (West 2008).

¶ 75    The Utilities' argument fails. As a preliminary matter, in the proceedings before the ALJ, the Utilities expressly accepted the Commission staff's recommendations regarding the rate case expenses that could be recovered by the Utilities, including the staff's estimate of the total rate case expenses that the Utilities would incur in the future. In surrebuttal testimony filed on May 10, 2010, one of the Utilities' witnesses testified that "[f]or the purposes of these cases, the [Utilities] will accept staff's adjustment to [the Utilities' proposed] rate case expenses including the five year amortization period." Moreover, in their joint reply hearings brief filed on June 25, 2011, the Utilities informed the ALJ that "the [Utilities] have elected not to contest the rate case expense reviewed and recommended by Staff." The ALJ's July 21, 2010, proposed order accepted the Companies and staff's agreed recommendation. Although the Utilities filed exceptions to certain aspects of the ALJ's proposed order on August 6, 2010, they did not raise any objection to the ALJ's recommendation regarding the recoverable rate case expenses. In sum, the Utilities accepted the Commission staff's future rate case expense estimates, expressly agreed not to contest the issue before the Commission, and urged the Commission to adopt the Commission's estimates of current *and future* rate case expenses. Thus, the Commission argues that the doctrines of waiver, estoppel, and invited error preclude the Utilities from rescinding their prior agreement and relitigating the issue of rate case expenses.

¶ 76    Although these arguments might well have merit, we do not need to address them to decide this issue. In their application for rehearing, the Utilities baldly asserted that "new information" proved that the Utilities' actual rate case expenses exceeded the amount that the Commission allowed them to recover. However, the Utilities did not identify this alleged "new information" or explain how it proved that the rate case expense estimates previously agreed to by the parties were inaccurate. In sum, the Utilities presented no new *evidence* justifying the recovery of additional rate case expenses; their application for rehearing presented nothing but conclusory assertions. That was not enough to require rehearing based on "new evidence." 220 ILCS 5/10-201(e)(ii) (West 2008). Given this, and given the Utilities' unequivocal and unqualified prior acceptance of the Commission staff's future rate case expense estimates, we cannot say that the Commission erred in denying the Utilities' application for rehearing. See generally *Illinois Power Co. v. Illinois Commerce Comm'n*, 254 Ill. App. 3d 293, 304-05 (1993).

¶ 77                                    CONCLUSION

¶ 78    For the foregoing reasons, we reverse the Commission's order granting the Commission staff's motion to strike from the Associations' brief references to the comments made by members of the public during the public forums and on the Commission's website. We remand the matter to the Commission and direct the Commission to: (1) allow the parties to

cite those public comments in their briefs and to make appropriate arguments based on those comments; (2) consider the substance of the public comments and the parties' arguments regarding the comments in a manner consistent with this Opinion when deciding the case; and (3) include transcripts of the public comments in the Commission's administrative record and, if necessary, the record on appeal. We affirm the Commission's decision in all other respects. The Commission's motion to strike material from the Associations' brief on appeal and separate appendix is denied.

¶ 79      Affirmed in part and reversed in part; cause remanded.